## SALES AGREEMENT

THIS AGREEMENT, made and entered into this 28th day of April 2004, by and between PRUITT SEAFOOD, INC., a Virginia corporation, hereinafter referred to as "Seller," and DNM SEAFOOD, INC., hereinafter referred to as "Purchaser."

### WITNESETH:

WHEREAS, the Seller is the sole and rightful owner of that certain business known as "Pruitt's Seafood," hereinafter referred to as the "Business," located at 1100 Main Avenue, S.W., Washington, D.C. 20024, hereinafter sometimes referred to as "Premises"; and,

WHEREAS, the Seller desires to sell to Purchaser, and Purchaser to purchase from Seller, certain assets of the Seller.

NOW, THEREFORE, for and in consideration of the mutual premises and covenants set forth herein and other valuable consideration, the parties hereto do agree as follows:

1. **Sale of Business.** The Seller shall sell, convey, and transfer to the Purchasers, free and clear of all liabilities, obligations, and encumbrances, the assets of the Business owned and operated by the Seller at the Premises, including, but not limited to, the trade name and goodwill of the business as a going concern, transferable licenses, the equipment, furniture, fixtures, including all the inventory, and all other tangible and intangible property rights, used and enjoyed by the Seller in connection with the Business (the "Assets"), except for cash on hand or in bank accounts, accounts receivable, security deposit with the landlord and those assets listed on Exhibit A hereto.

2. **Purchase Price.** The total purchase price that the Purchaser shall pay to the Seller shall be the sum of THREE MILLION DOLLARS ($3,000,000.00), which shall be paid as follows:

   a) the sum of Fifty Thousand Dollars ($50,000.00) as earnest money deposit (the "Deposit") to be held in escrow by Purchaser's attorney, Moon, Park & Associates, until disbursed in accordance with the terms of this Agreement;

   b) the sum of Six Hundred Fifty Thousand Dollars ($650,000.00) in cash or certified funds at the settlement, of which the aforesaid deposit shall be a part;

   c) the sum of One Hundred Fifty Thousand Dollars ($150,000.00) by executing a promissory note ("Note I") in the same amount with no interest at the settlement. Said note shall be paid in one lump sum on or before July 31, 2004;

   d) the sum of Two Million Two Hundred Thousand Dollars ($2,200,000.00) by executing a promissory note ("Note II") in the same amount with annual interest of four and 2 tenths percent (4.2%). Said note shall be fully amortized for a term of seventeen and one-half (17.5) years and be paid by consecutive monthly installments of Fourteen Thousand Eight Hundred Eleven and 15/100 Dollars ($14,811.15) with such first installment due in thirty (30)

EXHIBIT A

days from the settlement date (hereinafter defined). Any installment not made within seven (7) days after being due shall incur five percent (5%) late charge. Seller may accelerate the remaining balance of the note together with accrued and unpaid interests forty (40) days after having sent Purchaser notice of any default under the respective Note I or Note II with a fifteen (15) day cure period once the Purchaser defaults under the note. The Notes I and II shall be guaranteed personally by Purchaser and Young Wha Kim and secured by a security agreement.

e) in addition, the following seafood inventory shall be counted at a wholesale or invoice price whichever is lesser and be paid in cash or certified funds at settlement: unopened boxes in cooler or freezer and live crabs. Any and all other inventories (for illustration purpose only, seafood displayed on 120-feet display stand, opened boxes in or out of cooler or freezer, dead crabs, etc.) shall be included in the total purchase price of Three Million Dollars.

3. **Adjustments.** The parties hereto shall make necessary and proper adjustments at the time of settlement for the items including, but not limited to, rent, utilities, and taxes.

4. **Bulk Sale.** The parties hereto duly acknowledge that the sale and purchase of the Business contemplated hereunder may be subject to District of Columbia Bulk Sales Act, under which the creditors of the Business should be given a prior written notice of the settlement. The Seller shall give the Purchaser a list of the Seller's creditors for the Business within seven (7) days after execution of this Agreement. In lieu of Bulk Sales Affidavit, the Seller may execute an Affidavit of No Creditor at the time of the settlement.

5. **Representations and Warranties of Seller.** The Seller warrants, represents, and agrees as follows:

a) At settlement, it shall have good and marketable title to and own outright all properties and assets to be transferred hereunder.

b) It has complied with all applicable laws, ordinances, regulations, and orders which have material impact on its business and properties and holds licenses and permits from appropriate governmental authorities necessary for the conduct of its business. Seller agrees to pay for all reasonable expenses the Purchaser incurred in the event that any fee is required for the transfer of the licenses and/or permits required for the operation of the Business by Purchaser; provided, however, that such fees and expenses shall not exceed Five Hundred Dollars ($500.00).

c) All material tax returns for federal, state and local income, withholding, retail sales, personal property, excise, and franchise taxes required by law to be filed by the Seller, prior to the date of this Agreement, have been filed, or shall be filed forthwith, and all such taxes as may accrue through the settlement date shall be paid by the Seller on a timely basis, or will be timely satisfied from Seller's cash proceeds at the settlement.

d) All certificates, licenses, and permits which are required for the lawful use and occupancy of the premises and structures used by the Seller have been obtained and are and on the settlement date, will be in full force and effect; excluding assignment for lease of the Premises.

6. **Covenants of Seller.** The Seller covenants with the Purchaser as follows:

a) The Bill of Sale, Affidavit of No Creditor, and instruments of assignment to be delivered at the settlement will transfer all of the Assets free and clear of all encumbrances, and will contain the usual warranties and affidavit of title. The equipment, furniture and fixture conveyed shall be in good working order, reasonable wear and tear excepted, on the settlement date and the Seller agrees to make all necessary repairs to the equipment, furniture and fixture in the event it is found at the time of settlement to be not in working order. Purchaser shall be allowed to inspect the equipment, furniture and fixture the day before the settlement at its own costs and expenses.

b) The Seller, up to the date of settlement, shall operate and maintain its business in its regular course; it will not violate the terms of the lease of the Premises or other contracts necessary or desirable in and to the continued operation of the Business in the regular course and without interruption; and it shall conduct its business, up to the date of settlement, in accordance with all governmental laws, rules, and regulations.

c) That all of its creditors (including taxing authorities) relating to its ownership and operation of the Business shall be satisfied at the time of settlement or shall be promptly paid from the proceeds received by the Seller at settlement. The parties shall cooperate fully with one another to facilitate the prompt payment, or compromise and settlement of all such claims.

7. **Settlement.** The settlement of this purchase and sale shall take place on or before May 3, 2004 at the law offices of Moon, Park & Associates, 7617 Little River Turnpike, #930, Annandale, VA. 22003.

8. **Indemnification.**

a) Seller agrees to indemnify and hold harmless the Purchaser from and against any loss, cost, damage, liability, or expense, in excess of One Thousand Dollars ($1,000.00), including reasonable attorney's fees, arising in any manner upon a breach of warranty or no-fulfillment of any covenant or agreement on the part of the Seller under this Agreement, and arising out of operation of the Business prior to the settlement. In no event shall Sellers indemnification liability exceed the amount paid under the Purchase Price.

b) Purchaser agree to indemnify and hold harmless the Seller from and against any lost, cost, damage, liability, or expense, in excess of One Thousand Dollars ($1,000.00), including reasonable attorney's fees, arising in any manner upon a breach of warranty or non-fulfillment of any covenant or agreement on the part of the Purchaser under this Agreement, and arising out of operation of the Business on and after the settlement.

9. **Contingencies.** This Agreement is subject to the following contingencies, non-satisfaction of any or all of which on or before the settlement date shall entitle either party to hold this Agreement null and void in its entirety:

a) The parties obtaining assignment of the existing lease agreement for the Premises from District of Columbia Government; and,

b) Purchaser and Purchaser's attorney being satisfied with the terms and conditions of the existing lease agreement for the Premises. Purchaser and Purchaser's attorney shall be given ten (10) days immediately following ratification of this Agreement to review the lease agreement.

In the event that either party holds this Agreement null and void in its entirety due to non-satisfaction of any of the aforesaid contingencies, Purchaser shall be entitled to receive any and all monies paid hereunder forthwith. In the event that Purchaser holds this Agreement null and void for any reason other than the aforesaid contingencies, Seller shall be entitled to receive the Deposit.

10. **Risk of Loss.** The Seller shall assume all risk of loss due to fire or other casualty up to and including the date of settlement.

11. **Training.** The Seller, by himself and through a managerial employee, agrees to train Purchaser for two (2) weeks immediately after the settlement during all normal hours of Business, at its own costs and expenses, so that Purchasers may be familiarized with the operation of Business.

12. **Non-Competition.** The Seller agrees to, and shall cause its stockholders, officer and directors to, execute a non-competition covenant at the settlement, covenanting not to engage in the same or substantially similar type of business, as owner (legal or beneficial), partner, shareholder, employee, or otherwise, directly or indirectly, within the area of Ten (10) city blocs from Premises for a period of Five (5) years. Notwithstanding anything contrary herein, Seller or Seller's stockholders or directors are allowed to engage in a wholesale seafood business.

13. **Survival of Representations, Warranties, and Agreements.** The representations, warranties, indemnities, and agreements set forth and/or made pursuant to this Agreement shall remain operative and shall survive the settlement under this Agreement for three (3) months.

14. **Entire Agreement.** This Agreement represents the entire agreement of the parties relating to the purchase and sale of the Business. All prior negotiations and agreements between the parties are merged in this Agreement and there are no understandings or agreements other than those incorporated herein. This Agreement may not be modified or altered, except by an instrument in writing duly executed by the parties hereto.

15. **Binding Effect.** This Agreement shall be binding upon this signatories hereto, their heirs, personal representatives, successors, and assigns. This Agreement shall be governed by the laws of the Commonwealth of Virginia.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on the day and year first above written.

**SELLER:**

**PRUITT SEAFOOD, INC.**
a Virginia corporation

*/s/ Steward B. Pruitt*
By:  President, Steward B. Pruitt

*/s/ Naomi R. Pruitt*
By: Vice President, Naomi R. Pruitt

*/s/ Jeffrey K. Pruitt*
By: Secretary, Jeffrey K. Pruitt

**PURCHASER:**

**DNM SEAFOOD, INC.**

*/s/ Sung Jin Kim*
By: Sung Jin Kim

#440195 v2 - Sales Agreement - Pruitt's Seafood

## EXHIBIT A
## EXCLUDED ASSETS

1. 1995 Mach 6-Wheel Truck
2. 1997 International 6-Wheel Truck
3. 1997 International 6-Wheel Truck
4. 1998 International 6-Wheel Truck
5. 2000 Ford F-350 Pickup
6. 2003 Ford F-350 Pickup
7. Honda Pressure Washer
8. Generic Generator
9. Tools and Tool Boxes

## EXHIBIT B
## ADDITIONAL TRANSFERRED ASSETS TO BUYER

2003 Ford F-350 Pickup without refrigeration unit.

2000 Ford F-350 15 passenger van

One sheet 3/16th inch thick steel deck plate

Two ceiling fans for cook boat

*S.B.P* (signature)