Westlaw.

Not Reported in S.E.2d
Not Reported in S.E.2d, 54 Va. Cir. 259, 2000 WL 33179850 (Va. Cir. Ct.)
**(Cite as: 2000 WL 33179850 (Va. Cir. Ct.))**

Page 1

H

Circuit Court of Virginia.
Pamela Kim SMITH,
v.
Sara M. NONKEN,
and
Ruth Kellogg,
and
Gordon Milne, Jr.,
and
Cynthia G. Dellinger,
and
George V. Watkins,
and
Dellinger-Shenandoah Valley Realty, Inc.
**No. CL98-129.**

Dec. 15, 2000.

OPINION AND ORDER

McGRATH.

*1 This case is currently before the Court on Defendant's Motion for Summary Judgment. The Court, in an earlier decision on August 14, 2000, dismissed Plaintiff's causes of action sounding in fraud against these defendants and the three former defendants. For purposes of ruling on motions for summary judgment, this court, under well-established principles, must view the facts in a light most favorable to the nonmoving party. *E.g., Carson v. LeBlanc,* 245 Va. 135, 437 S.E.2d 189 (1993).

In June 1992, Defendants Nonken, Kellogg, and Milne by inheritance became the owners of a tract of real estate with improvements in Shenandoah County, Virginia. Around April 1993, Dellinger-Shenandoah Valley Realty, Inc., entered into a listing agreement with Nonken, Kellogg, and Milne to sell the property. In July 1993, the realtor showed the property to Plaintiff's husband two times; both times the realtor affirmed that the lower level of the house had an "electric radiant floor heating system," and that the heating and other mechanical systems in the house were in good working condition. Plaintiff's husband also met with the listing broker, who again affirmed that the lower level of the house had radiant heat. Following negotiations, Plaintiff tendered an offer to purchase the property. The contract, along with two standard form Virginia Association of Realtors Amendments of Contract of Purchase, dated July 27, 1993 and August 7, 1993, and a Presettlement Inspection document, dated September 10, 1993 were executed by one or more of the parties.

The basic contract of sale between the parties provides, in part,
E. EQUIPMENT CONDITION AND INSPECTION. Purchaser agrees to accept the Property at settlement in its present physical condition, except as otherwise provided herein. Seller warrants that the appliances, heating and cooling equipment, plumbing and electric systems, and well and/or septic system will be in working order at the time of settlement or of Purchaser's occupancy, whichever occurs first ... Seller grants to Purchaser or his representative the right to make a preoccupancy or presettlement inspection to verify that the condition of the Property conforms to this contract.

The Plaintiff then retained a home inspector who performed on Plaintiff's behalf an inspection of the property and improvements sometime before August 7, 1993. On August 7, 1993, the remaining Defendants, Sara M. Nonken, Gorden Milne, Sr., and Ruth M. Kellogg and the Plaintiff, Pamela Kim Smith, signed a document entitled "Amendment of Contract Purchase" which states in pertinent part:
"Now, therefore, in consideration of the premises and of the mutual promises of the parties set forth in the Contract herein, Seller and Purchaser agree that the Contract shall be amended as follows:
p. 13, OTHER ITEMS, Home Inspection, Purchaser hereby removes the home Inspection contingency and will proceed to closing as per contract. Not to exclude any of the standard provisions.... Except as hereby expressly amended, the Contract shall remain in full force and effect as originally executed."
*2 Furthermore, on September 10, 1993, the day of settlement, a Presettlement Inspection document was signed by the Plaintiff and reads in part:
"By contract dated, July 10, 1993, between, Nonken, Etals. (the Seller/sellers), and Pamela Kim Smith (sic) (the Purchaser/purchasers). Purchaser/purchasers have inspected the property, accept the property in its present condition and will proceed to closing as per contract. The Purchaser/purchasers also agree the Seller/sellers have fulfilled their obligations as per paragraph

Case 1:05-cv-02181-EGS   Document 4-5   Filed 11/08/2005   Page 2 of 10

Not Reported in S.E.2d                                                                 Page 2
Not Reported in S.E.2d, 54 Va. Cir. 259, 2000 WL 33179850 (Va. Cir. Ct.)
**(Cite as: 2000 WL 33179850 (Va. Cir. Ct.))**

"E", Standard Provision of the contracts, EXCEPT FOR: *personal items in garage to be removed"*

Plaintiff alleges in her Motion for Judgment that nothing in the contract modifies in any way the Seller's warranty that the heating system would be in good operating condition which is contained in Standard Provision E. Therefore, Plaintiff alleges that Nonken, Kellogg, and Milne breached their warranty contained in Standard Provision E of the Contract as it relates to the radiant floor heating system in the lower level of the house and that Noken, Kellogg, and Milne are jointly and severally liable to Smith for her damages arising out of this breach.

The remaining defendants (i.e. the sellers) in this case move for summary judgment based upon the several contract documents executed by and between the parties. The Defendants raise two distinct basis's for their Motion for Summary Judgment. Defendant's first basis for summary judgment is that the warranties and representations provided in Paragraph E of the contract for sale, *supra,* was merged into the deed upon closing. Their second basis for summary judgment is that the Virginia Association of Realtors Amendment of Contract of Purchase, dated August 7, 1993, and the Presettlement Inspection document, dated September 10, 1993 effectively served as a waiver of the warranties and representations made in Paragraph E of the sales contract. The Defendants also allege that the Presettlement Inspection document was an "acceptance" of all of the appliances, heaters and related appliances in their current condition, and that the Plaintiff had accepted title to the real property in "as is" condition.

The Court must first consider whether the sales contract, including the warranties and representations in Paragraph E, were merged into the deed. Under the well-established doctrine of merger, "the deed of conveyance represents the final agreement of the parties and all prior agreements, oral or written, are merged into the deed of conveyance". *See, e.g., Empire Mgmt. & Dev. Co. v. Greenville Assocs.,* 255 Va. 53, 54, 496 S.E.2d 440 (1998). However, agreements "which are collateral to the passage of title and not covered by the deed can survive its execution" and are not merged into the deed. *See Empire Mgmt. & Dev. Co. v. Greenville Assocs.,* 255 Va. 53, 54, 496 S.E.2d 440 (1998) (agreement for payment rental income after transfer of property deemed collateral); *See also Davis v. Tazewell Place Assocs.,* 254 Va. 257, 492 S.E.2d 162 (1997) (warranty that house to be constructed on property would be constructed in workmanlike manner held collateral); *Miller v. Reynolds,* 216 Va. 852, 223 S.E.2d 883 (1976) (agreement that land was suitable for percolation and would qualify for building permit found collateral); *Woodson v. Smith,* 128 Va. 653, 104 S.E. 794 (1920)). It is worth noting that in all of the preceding cases, as best as can be told from the record, the Court was dealing with the common law doctrine of merger, and not with a specific contractual provision that provided for merger, nor did the Court deal with an express contractual provision providing that warranties would expire upon the happening of a certain event (e.g.settlement).

*3 In this case, the contract for sale signed on July 10, 1993, contained a Section J, Entitled "MISCELLANEOUS" which provided, *inter alia,* the following language:

> "This Contract represents the entire agreement between the Seller and Purchaser and may not be modified or changed except by written instrument executed by the Parties: PROVIDED, HOWEVER, that the provisions of paragraph 9 of this Contract may not be modified of changed without the written consent of the Listing Broker and the Selling Broker. This Contract shall be construed, interpreted and applied according to the laws of the Commonwealth of Virginia and shall be binding upon and shall insure to the benefit of the heirs, personal representatives, successors, and assigns of the Parties. To the extent any handwritten or typewritten terms herein conflict with or are inconsistent with the printed terms hereof, the handwritten or typewritten terms shall control. UNLESS OTHERWISE PROVIDED HEREIN, THE REPRESENTATIONS AND WARRANTIES MADE BY SELLER HEREIN AND ALL OTHER PROVISIONS OF THIS CONTRACT SHALL BE DEEMED MERGED INTO THE DEED DELIVERED AT SETTLEMENT AND SHALL NOT SURVIVE SETTLEMENT." (emphasis in originial).

After reviewing the cases cited, *supra,* and the explicit contractual language which provided "The Representations and warranties made by seller herein ... shall not survive settlement", this Court was prepared to hold that by explicit contractual provision, the sellers' warranties expired at settlement, and Plaintiff had no viable cause of action. However, the Supreme Court's Decision on November 2, 2000 in *Beck v. Smith,* Record No. 992904, (Va.S.Ct., Nov. 3, 2000) casts serious, and probably terminal doubt on that reasoning.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-02181-EGS   Document 4-5   Filed 11/08/2005   Page 3 of 10

Not Reported in S.E.2d                                                                                    Page 3
Not Reported in S.E.2d, 54 Va. Cir. 259, 2000 WL 33179850 (Va. Cir. Ct.)
**(Cite as: 2000 WL 33179850 (Va. Cir. Ct.))**

In *Beck,* the plaintiffs executed a contract for the purchase of real estate from the defendant. The contract required the defendant to "obtain a building permit and to provide a general warranty deed subject to utility easements that do not materially and adversely effect (sic) the Purchaser's intended use of the Property..." *See Id.* The defendant seller granted a utility easement to an electric cooperative and the settlement occurred two days after the grant. The purchasers filed a breach of contract and fraud action. The *Beck* court noted that the contract provided a warranty that "any utility easement would 'not materially and adversely effect (sic) the ... intended use of the property' " by the purchasers and also provided that *"representations and warranties of the seller contained in the contract 'shall be deemed merged into the deed delivered at settlement and shall not survive settlement." See Beck v. Smith,* Record No. 992904, (Va.S.Ct., Nov. 3, 2000) (emphasis added). The *Beck* court noted that the above merger language was not repeated in the deed. Furthermore, the *Beck* court stated that in determining whether agreements between the parties regarding the purchase and sale of the property are collateral to the sale, the court must determine that they are distinct agreements made in connection with the sale of property, that they do not affect the title to the property, that they are not addressed in the deed, and that they do not conflict with the deed. *See Id.* The *Beck* court held that the sales contract regarding the impact of easements on the purchasers' intended use of the property was collateral to the transfer of title, and was not merged into the deed, and therefore survived the execution of the deed, *even when there was an express merger provision in the contract. See Beck v. Smith,* Record No. 992904, (Va.S.Ct., Nov. 3, 2000).

*4 In the case at hand, the contract for sale contains an express warranty, like the *Beck* sales contract, which is contained in paragraph E, as noted *supra.* Moreover, the contract for sale contains merger language in section J, entitled "MISCELLANEOUS", *supra,* which is very similar to the merger provision found in *Beck.* In this case, like in *Beck,* the contract for sale is a distinct agreement made in connection with the sale of property, it does not affect the title to the property, it is not addressed in the deed, and it does not conflict with the deed. *See Beck v. Smith,* Record No. 992904, (Va.S.Ct., Nov. 3, 2000). In light of the recent decision in *Beck v. Smith,* this Court is compelled to find that the warranties of the condition of the improvements on the land were collateral to the transfer of title, and that the contract for sale was not merged into the deed survived the execution of the deed despite the express contractual language in the "Miscellaneous" provision which was agreed to by both parties.

Turning to the Defendants' second grounds for summary judgment, the Court must consider whether the Presettlement Inspection document, dated September 10, 1993, and the Amendment of Contract Purchase dated August 7, 1993, acted as a waiver of the warranties and representations made in paragraph E of the contract for sale.

It is a well-established principal that contracting parties may "modify the terms of their contract by express mutual agreement". *See Stanley's Cafeteria, Inc. v. Albert Abramson, Et Al., Etc.,* 226 Va. 68, 72, 306 S.E.2d 870 (1983). Furthermore, "when one party claims that the other party has surrendered a right guaranteed by the contract, the party asserting such modification must prove either passage of valuable consideration, estoppel in pais, or waiver of the right". *See Stanley's Cafeteria, Inc. v. Albert Abramson, Et Al., Etc.,* 226 Va. 68, 73, 306 S.E.2d 870 (1983), (citing *Atlantic Coast Line v. Bryan,* 109 Va. 523, 65 S.E. 30 (1909)). The burden is on the party relying on a waiver to prove the other party's knowledge of the facts basic to the exercise of the right and the intent to relinquish that right. *See Stanley's Cafeteria, Inc. v. Albert Abramson, Et Al., Etc.,* 226 Va. 68, 73, 306 S.E.2d 870 (1983) (citing *Employers Ins. Co. v. Great American,* 214 Va. 410, 412-13, 200 S.E.2d 560. 562, (1970)). Furthermore, these two elements of wavier must be proven by "clear, precise and unequivocal evidence." *See Stanley's Cafeteria, Inc. v. Albert Abramson, Et Al., Etc.,* 226 Va. 68, 74, 306 S.E.2d 870 (1983) (citing *Utica Mutual v. National Indemnity,* 210 Va. 769, 773, 173 S.E.2d 855, 858 (1970)*; accord Schulze v. Kwik-Chek Realty,* 212 Va. 111, 112, 181 S.E.2d 629, 630 (1971)).

The Plaintiff argues that under the language of the Presettlement Inspection document and the Amendment of Contract Purchase, she did not relinquish her contractual warranty rights in Paragraph E. However, "mere disagreement about the meaning of otherwise unambiguous language does not make it ambiguous", and therefore the Court in the present case will look to the plain meaning of the contract for sale, the Amendment of Contract Purchase and the Presettlement Inspection document to determine the intent of the parties. *See Stuarts Draft Shopping Center, L.P. v. S-D Associates,* 251 Va. 483, 468 S.E.2d 885 (1996), (citing *Appalachian Power Co. v. Greater Lynchburg Transit Co.,* 236

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-02181-EGS    Document 4-5    Filed 11/08/2005    Page 4 of 10

Not Reported in S.E.2d                                                                                                    Page 4
Not Reported in S.E.2d, 54 Va. Cir. 259, 2000 WL 33179850 (Va. Cir. Ct.)
(Cite as: 2000 WL 33179850 (Va. Cir. Ct.))

Va. 292, 295, 374 S.E.2d 10, 12 (1988)). The Plaintiff also argues that the contract for sale provides, in the "Miscellaneous" provision, that it "represents the entire agreement between the Seller and Purchaser and may not be modified or changed except by written instrument executed by the parties" and therefore the Presettlement Inspection is not a modification of the contract because it was not signed by the Defendants. However, this position is contradicted by the Supreme Court's ruling in _A. William Reid and Rising Tide Productions, Inc. v. John J. Boyle, Et. Al., 259 Va. 356 (2000)_. In _Reid_, the Supreme Court of Virginia held that a written employment contract was modified by an oral contract and by the parties course of dealing even though the written contract stated that, the agreement could not be modified in any way unless by a written instrument signed by both the parties. See _A. William Reid and Rising Tide Productions, Inc., v. John J. Boyle, Et Al., 259 Va. 356, 527 S.E.2d 137 (2000)_. In this case, the Plaintiff _did sign_ the Presettlement Inspection document, and because the Plaintiff is the one against whom the contract is being enforced, she is estopped from complaining that the other party had not signed the document.

*5 It is clear from Paragraph E of the contract for sale that the Plaintiff had a contractual right by express warranty "that the appliances, heating and cooling equipment, plumbing and electric systems, and well and/or septic system will be in working order at the time of settlement or of Purchaser's occupancy, whichever occurs first". It is important to note that Paragraph E also stated that purpose of the presettlement inspection was "to verify that the condition of the Property conforms to this contract." The Court finds that through the language of Paragraph E and the Plaintiff's signature on the contract for sale that the Plaintiff had knowledge of the facts basic to the exercise of the rights given under the contract, particularly those rights warranted in Paragraph E. Furthermore, the Court finds that the Plaintiff intentionally relinquished her rights under Paragraph E when she signed the Amendment of Contract Purchase that stated that the "Purchaser hereby removes the home inspection contingency"; and when the Plaintiff signed the presettlement inspection document that stated that the purchaser had "inspected the property, accept[s] the property in its present condition..." and that purchaser agrees that the sellers had "fulfilled their obligations as per paragraph "E". Plaintiff, having agreed in writing, after actually having an inspection done, that the Defendants had fulfilled their warranty obligations under Paragraph E, she cannot try to unring the bell.

The Court finds, that after taking into consideration all of the agreements made by the parties incident to the sale of the property, that the Defendants have by "clear, precise, and unequivocal evidence" proven that the Plaintiff, by express mutual agreement, with the knowledge of the facts basic to the exercise of the right and the intent to relinquish that right, knowingly waived her contractual rights under Paragraph E of the contract for sale by contractual modification.

Therefore, in light of the above, this case is hereby dismissed with prejudice. Additionally, in light of the decision by this Court to dismiss this case, Plaintiff's Motion in Limine on Damages is no longer an issue which the Court must decide and therefore is not addressed.

The Clerk of the Court is directed to send certified copies of this Opinion and Order to Richard E. Gardiner, Esq., 10560 Main Street, Suite 404, Fairfax, Virginia 22030, Counsel for Plaintiff, Pamela K. Smith; Timothty R. Hughes, Esq., 1301 K. Street, N.W. Suite 400, East Tower, Washington, D.C. 20005, Counsel for Former Defendants Dellinger-Shenandoah Realty, Inc., Cynthia G. Dellinger and George V. Watkins; and George W. Johnston, III., Esq., Kuykendall, Johnston, Mckee & Butler, P.L.C., P.O. Box 2760 Winchester, Virginia 22604, Counsel for Defendants Sara M. Nonken, Ruth Kellogg, and Gordon Milne, Jr.

Not Reported in S.E.2d, 54 Va. Cir. 259, 2000 WL 33179850 (Va. Cir. Ct.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in S.E.2d
Not Reported in S.E.2d, 1991 WL 835182 (Va. Cir. Ct.)
**(Cite as: 1991 WL 835182 (Va. Cir. Ct.))**

Page 1

Only the Westlaw citation is currently available.

Circuit Court of Virginia, Loudoun County.
Lowe's Island Limited Partnership
vs.
NVKettler Limited Partnership, et al Christopher Properties, Limited Partnership
vs.
NVKettler, Limited Partnership, et al
**CHANCERY NO. 13174, CHANCERY NO. 13175.**

September 23, 1991.

*1 These causes came on for argument on the Complainant's Motion to Compel NVKettler, Limited Partnership to respond to Interrogatories and to Produce Documents, the Complainant's Motion for Leave to File a Second Amended Bill of Complaint and the Demurrers of all the Defendants. The Court heard argument on the Demurrers and the first ground of the Plea in Bar of the Kettler Defendants concerning the statute of limitations. It also heard argument on the Motion for Leave to File a Second Amended Bill of Complaint. These were all taken under advisement. Argument on the Motion to Compel was deferred pending the rulings on the Demurrer, Plea in Bar and the Motion for Leave to Amend.

James H. Chamblin, Judge.

For the reasons hereinafter set forth, (1) the Demurrers are sustained in part and overruled in part, (2) the Plea in Bar (first ground) is denied at this time and (3) the Motion for Leave to File a Second Amended Bill of Complaint is granted.

At oral argument the Court was advised that a settlement had been reached in Chancery No. 13173 (Batal Builders, Inc. v. NVKettler, Limited Partnership, et al). Therefore, the above two causes were the only ones argued by counsel.

I. DEMURRERS
Each Demurrer is addressed below. Each ground is discussed according to the numbered paragraph of each Demurrer.

A. Demurrer of NVKettler L.P. and Kettler & Scott, Inc.

1. Provision in Agreements concerning a waiver of cause of action for damages.

Paragraph 28 of the Agreement dated March 31, 1988 between NVKettler L.P. and A.G. Van Metre Construction, Inc. ("Van Metre") (the "Van Metre Agreement") and Paragraph 28 of the Agreement between NVKettler L.P. and Christopher Associates L.P. (the "Christopher Agreement") are identical. They provide for waiver of and limitation on remedies available to the purchasers, Van Metre and Christopher Associates.

Not only do the two Agreements provide for the purchase and sale of certain lots in Cascades, but also they impose post-closing obligations on the parties. Paragraph 28 appears to be a standard remedies provision for a real estate contract. It is equally apparent that it was not crafted to fit into a contract with post-closing obligations. Although the parties may not have realized the shortcomings of the paragraph when they executed the Agreement, they are still bound by the words of the Agreement.

Virginia adheres to the "plain meaning" rule, i.e. if an agreement is complete, plain and unambiguous in its terms, then a court cannot search for a meaning beyond the agreement itself. In other words, the writing is deemed to be the repository of the final agreement of the parties. Berry v. Klinger, 225 Va. 201, 208 (1983); Tiffany v. Tiffany, 1 Va. App. 11, 15 (1985). A contract's language is not to be treated as meaningless if it can given a reasonable interpretation. Winn v. Aleda Const. Co., 227 Va. 304, 307 (1984). Further, the parties are never presumed to have included a provision with no effect. Hughes & Co. v. Robinson Corp., 211 Va. 4, 7 (1970).

*2 While the words used in the first part of Paragraph 28 may be construed (because of the remedies to which the purchaser is limited) to apply only to pre-closing seller defaults, the words used in the second part are clear, plain, unequivocal and unambiguous. The second part is a clear waiver by the purchaser of any cause of action for damages as a result of a default by the seller. The "default hereunder" referred to in the last line of Paragraph 28

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in S.E.2d                                                                                                                    Page 2
Not Reported in S.E.2d, 1991 WL 835182 (Va. Cir. Ct.)
**(Cite as: 1991 WL 835182 (Va. Cir. Ct.))**

must be construed as a default under any provision of the Agreement, i.e. whether it occurred before or after closing. There is no language that limits "default hereunder" to a default contemplated by the first part of Paragraph 28 or by Paragraph 9 of each Agreement. The use of a semi-colon between the first and second parts of Paragraph 28 does not make the second part subject to or limited by the first part. It merely indicates a degree of separation between two clauses related because they both concern remedies.

The second part may have been entered into unwisely or improvidently by the purchaser, but that is not a sufficient reason for the court to find a limitation or a qualification to the waiver not expressly set forth therein. Parol evidence is not admissible to show the intentions of the parties if the language of the contract is clear. Berry, 225 Va. at 208.

The demurrer is sustained on this ground. The Complainants cannot assert a cause of action for damages for breach of contract. This also prevents the Complainants from asserting a cause of action for an accounting.

2. Complainant, Christopher Properties L.P., has no cause of action because it is not a party to the Christopher Agreement.

The Demurrer is sustained on this ground for the reasons asserted by Kettler. However, because it appears that this ground arises solely because of an inadvertent omission from the Amended Bill of Complaint of the assignment allegation contained in the original Bill of Complaint, Christopher Properties is granted leave to amend as more particularly hereinafter set forth.

3. Lowe's Island Limited Partnership has no standing to assert any cause of action against the Kettler Defendants for fraud.

Lowe's Island Limited Partnership ("Lowe's") is the complainant in Chancery No. 13174 as a result of the decree entered May 13, 1991 which allowed Lowe's to be substituted for Van Metre as the real party in interest. The amended bill of complaint alleges that Van Metre assigned all its rights, title and interest to Lowe's after the Van Metre Agreement was executed.

The Demurrer is sustained on this ground because Van Metre cannot assign a personal tort (fraud or constructive fraud) claim. Lowe's motion for leave to amend as to this issue is addressed below.

4. Lowe's cannot assert a cause of action for breach of contract.

The Demurrer is sustained on this ground because Paragraph 17 of the Van Metre Agreement prohibits an assignment of the contract without the seller's consent, and there is no allegation that NVKettler L.P. consented to such an assignment. Van Metre's motion for leave to amend as to this issue is discussed below.

*3 5. Vagueness of the fraud allegations.

The Complainants allegations of fraud are clearly set forth in paragraphs 26, 27 and 30 as to Lowe's and paragraphs 42, 43 and 46 as to Christopher Properties. The fraud allegations are identical as to each Complainant. These allegations are clear, and the Kettler Defendants should have no difficulty in ascertaining what the Complainants allege to have been false representations.

The Demurrer is overruled on this ground.

6. Allegation of Inducement.

The Kettler Defendants assert that the amended bill of complaint does not allege that the Complainants were fraudulently induced to enter into the Agreements. The allegations may not be in a logical or chronological order, but a full reading of paragraphs 26, 27, 30, 42, 43 and 46 sufficiently allege the inducement to contract. The Demurrer is overruled on this ground.

7. The fraud allegations are insufficient as being contradictory of the Agreements.

All of the alleged false representations are related to obligations of Kettler under the Agreements. They concern the amenities to be built by Kettler and the marketing program for Cascades. They do not concern present or pre-existing facts, but promises or things which Kettler would do in the future. The elements of actual fraud are a false representation of a material fact made intentionally and knowingly with the intent to mislead with reliance by the party mislead and resulting damage to the party misled. Spence v. Griffin, 236 Va. 21, 28 (1988).

As a general rule fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events. Soble v. Herman, 175 Va. 489, 500 (1940).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-02181-EGS   Document 4-5   Filed 11/08/2005   Page 7 of 10

Not Reported in S.E.2d                                                                                                                Page 3
Not Reported in S.E.2d, 1991 WL 835182 (Va. Cir. Ct.)
(Cite as: 1991 WL 835182 (Va. Cir. Ct.))

However, as early as Lloyd v. Smith, 150 Va. 132 (1928) the Supreme Court recognized an exception where the fraud is "predicated on promises made with a present intention not to perform them, or on promises made without any intention to perform them." 150 Va. at 145. See, Sea-Land Service, Inc. v. O'Neal, 224 Va. 343 (1982).

If the general fraud rule were otherwise, then every breach of contract could be made the basis of an action for fraud. Lloyd, 150 Va. at 145. The gist of a fraud action based on a present intention not to perform or without an intent to perform is the fraudulent intent, and not the breach of the agreement to perform. Sea-Land, 224 Va. at 351.

While the mere failure to perform an antecedent promise may constitute breach of contract, it does not amount to fraud. But the promisor's intention - his state of mind - is a matter of act. When he makes the promise, intending not to perform or without the intent to perform, his promise is a misrepresentation of present fact, and if made to induce the promisee to act to his detriment, is actionable as fraud. Colonial Ford v. Schneider, 228 Va. 671, 677 (1985). However, Robberecht v. Maitland Bros., 220 Va. 109 (1979) adds another important element when fraud in the inducement of a contract is involved - the promisee must have had a right to rely on the promisor's representations, 220 Va. at 111, or, put another way, the false representation is made in a way so as to induce a reasonable man to believe it. Packard Norfolk v. Miller, 198 Va. 557, 565 (1956); Jefferson Standard v. Hedrick, 181 Va. 824, 833 (1943).

*4 Not only have the Complainants alleged actual fraud, but also they have alleged "constructive fraud." See the language below "COUNT TWO", page 10, and below "COUNT TWELVE", page 17, of the Amended Bill of Complaint. Constructive Fraud is established when one proves by clear, cogent and convincing evidence that there was a material false representation, that the hearer believed to be true, that it was meant to be acted on, that it was acted on, and that damage was sustained. Nationwide Ins. Co. v. Patterson, 229 Va. 627, 629 (1985). "Whether the representation is made innocently or knowingly, if acted upon, the effect is the same. In one case the fraud is constructive; in the other it is actual." Jefferson Standard Life Insurance Co. v. Hedrick, 181 Va. 824, 834 (1943). In paragraphs 30 and 46 of the Amended Bill of Complaint the Complainant alleges that Kettler knew (which would make it actual fraud), or should have known (which would make it constructive fraud) the representations were false, and "further that Kettler acted negligently and/or recklessly, constructively defrauding" the Complainants.

The Kettler Defendants argue that the fraud allegations are insufficient because the alleged representations of Kettler are all contradicted by the language of the Agreements. They argue that the Complainants had to have known when the Agreements were executed (after the alleged false representations were made) that the terms of the Agreements contradicted the alleged false representations; hence, they could not have relied on the false representations and could not have been induced by them to enter into the Agreements.

The terms and provisions of a contract cannot be used to defeat a fraud claim where the fraud has vitiated the contract. The contract terms and provisions can stand no higher than the contract which is vitiated by the fraud. Robberecht, 220 Va. at 112; Packard Norfolk v. Miller, 198 Va. 557, 565 (1956). If the Agreements are vitiated by fraud, then the provisions thereof are not binding on the Complainants. However, the language of the Agreements can be considered as notice to the Complainants of Kettler's intentions as to the subject property. The provisions may not be binding on the Complainants as a matter of law, but they may be evidence that tend to show that the Complainants could not have reasonably relied on the false representations. This is an issue for the trier of fact to decide.

Therefore, it is an issue for the trier of fact to determine whether or not the Complainants reasonably relied on the alleged false representations in entering into the Agreements.

The Demurrer is overruled on this ground.

8. The integration clause of the Agreements defeat the fraud claims.

*5 If the fraud is proven, then the contract is vitiated and the integration provisions have no effect. For the same reasons set forth above, it is an issue of fact for the trier of fact to determine whether the provisions of the Agreement contradicting the alleged fraudulent representations put the Complainants on notice or defeat any reasonable reliance on their part. Further, the Complainants are not relying on post-closing fraud; therefore the amendment in writing provisions of the integration clause has no application.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in S.E.2d                                                                                                                           Page 4
Not Reported in S.E.2d, 1991 WL 835182 (Va. Cir. Ct.)
**(Cite as: 1991 WL 835182 (Va. Cir. Ct.))**

The Demurrer is overruled on this ground.

9. The integration clauses defeat the breach of contract claims.

A total integration clause (providing that the written instrument contains the entire agreement and all prior negotiations are integrated into the agreement) stands on the same footing as any other provision of the instrument. It may impose a heavy burden of persuasion on the Complainants, but it does not prevent them from asserting claims of partial integration. Shevel's, Inc. v. Southeastern Associates, 228 Va. 175, 183 (1984).

The Complainants breach of contract claim's concern the marketing of Cascades and Potomac Lakes together and the recreational amenities be built by Kettler. The Agreements are silent on the extent or timing of the recreational amenities, and the distinction between Cascades and Potomac Lakes. The Complainants therefore, seek to present additional independent facts contemporaneously agreed upon, not to contradict or vary the terms of the Agreement, but to establish the entire contract between the parties. See Renner Plumbing v. Renner, 225 Va. 508 (1983) (parol evidence allowed to explain terms in the contract such as "advisor," "bonus" and "net profit"). Therefore, the integration clause of the Agreements will not defeat the breach of contract claim.

The Demurrer is overruled on this ground.

10. Agreements silent on amenities and distinction between Cascades and Potomac Lakes.

This is not a ground, but merely a statement of fact. The Agreements speak for themselves.

11. Integration clauses make other representations as to amenities and size or status of Cascades immaterial to breach of contract claims.

The Demurrer is overruled on this ground for the reasons stated above.

12. Paragraph 14d of each Agreement defeats any allegation concerning the amenities and the distinction between Cascades and Potomac Lakes.

Paragraph 14d gives Kettler the right to amend its development plans for Cascades, makes no representations by Kettler as to the type of construction or development within Cascades, and gives Kettler the right to expand the area of Cascades. This paragraph must be read in conjunction with Paragraph 16 of each Agreement which gives Kettler the right to amend its development plans without the consent of the purchaser so long as the amendment does not in any manner materially affect the purchaser's proposed development of the lots.

*6 These paragraphs must also be read in light of paragraph 5 of the Agreement which states unequivocally that Kettler shall provide recreational amenities. However, the Agreement is silent on the nature, extent of timing of construction of the amenities or even if the amenities are a part of Kettler's development plan. At least considering what's set forth in the Agreements, the extent, if any, that the parties reached an agreement on the nature, and the extent and construction timing of the amenities is a matter that is pursued by the Complainant under the partial integration exception to the parol evidence rule.

The Demurrer is overruled on this ground.

13. No completion date for amenities stated in Agreements or alleged by Complainants.

Not only may this issue be the subject of evidence presented under the partial integration exception as addressed above, but also the law will impose a reasonableness standard for performance under all the circumstances for the reasons set forth in the Complainants memorandum. A party should not be able to defeat a clear contractual obligation just because the parties neglected to address the issue of time for performance in the written contract. Each party should have the opportunity to present evidence on the completion date when it is clear that such a term is missing from the Agreement. See, C. Friend, The Law of Evidence in Virginia (3d Edition 1988) sec. 290.

The Demurrer is overruled on this ground.

14. The Agreements limit the remedies available to the Complainants.

The Demurrer is sustained on this ground for the reasons stated in 1 above only to the extent that the Complainants may not assert a cause of action for damages for breach of contract or for an accounting.

15 and 16. General assertion of a failure to state a

Not Reported in S.E.2d                                                                                                       Page 5
Not Reported in S.E.2d, 1991 WL 835182 (Va. Cir. Ct.)
**(Cite as: 1991 WL 835182 (Va. Cir. Ct.))**

claim.

Both paragraphs are too general in nature to be considered as a ground for the Demurrer.

B. Demurrer of Bondy Way Development Corporation ("Bondy Way") and Chevy Chase, F.S.B. ("Chevy Chase")

1. General Statement of Failure to State a Claim

This paragraph is not considered a ground for the Demurrer.

2. Integration Clauses of the Agreements made them unambiguous

In Renner the Supreme Court spoke of terms such as "advisor" or "bonus" as being ambiguous in the context of the partial integration exception. The same approach is applicable here as to "recreational amenities" or "active and passive recreational facilities" as they are set forth in the Agreements. The Agreements are not unambiguous for at least this reason.

The Demurrer is overruled on this ground.

3. The Agreements do not state what Kettler will build or make any distinction between Cascades and Potomac Lakes

This is not a ground for a demurrer. It states a fact. The Agreements speak for themselves.

4. Integration clauses make other representations as to amenities and size or status Cascades immaterial to Complainant's claims

*7 The Demurrer is overruled on this ground for reasons stated in I(11) above.

5. Paragraph 14d of each Agreement defeats any allegation concerning the amenities and the distinction between Cascades and Potomac Lakes

The Demurrer is overruled on this ground for the same reasons stated in I(12) above.

6. No completion date for amenities stated in the Agreements or alleged by Complainants

The Demurrer is overruled on this ground for the reasons stated in I(13) above.

7. The Agreements limit the remedies available to the Complainants

The Demurrer is sustained on this ground for the same reasons and to the same extent as set forth in I(1) and I(14) above.

8. A General Statement that no claim stated against Bondy Way even if it is assumed that Bondy Way assumed all of Kettler's obligations

This paragraph is too general to state a separate ground for a demurrer. The allegations of paragraph 8 of the amended bill of complaint based "upon information and belief" are discussed below.

9. Chevy Chase not a party to any of the Agreements and not a successor in interest to any party to the Agreements

There being no allegation that Chevy Chase is a party to either Agreement or a successor in interest to any party to either Agreement, the Demurrer is sustained to the extent that no liability may be imposed on Chevy Chase as a party or a successor in interest to any party to the Agreements.

10. Allegations of Paragraph 9 of the Amended Bill of Complaint do not create a fiduciary duty upon Chevy Chase

There is a fiduciary duty when a special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence. Allen Realty Corp. v. Holbert, 227 Va. 441, 446 (1984); H-B Partnership v. Wimmer, 220 Va. 176 , 179 (1979). The existence of a fiduciary relationship is a question of fact. Allen Realty, 227 Va. at 447.

The Complainants merely allege that "upon information and belief" Chevy Chase has actively participated in and controlled all significant aspects of the development of the project and has participated in all major aspects regarding development, scheduling of construction and expenditure of funds. These allegations are not sufficient to support a factual conclusion that the Complainants reposed a special confidence in Chevy Chase.

The Demurrer is sustained on this ground.

The allegations based "upon information and belief" are discussed below.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11. General statements of failure to state a claim against Chevy Chase

This is not treated as a separate ground for the Demurrer.

12. General statements of failure to state a claim for accounting against Bondy Way or Chevy Chase

This, too, is merely a general statement, and not a separate ground for the Demurrer.

*8 13. Lowe's has no standing to assert a claim because of the failure to obtain Kettler's consent to an assignment of the Van Metre Agreement

The Demurrer is sustained on this ground for the reasons set forth in I(3) and I(4) above.

14. Christopher Properties has no cause of action because it is not a party to the Christopher Agreement.

The Demurrer is sustained for the reasons set forth in I(2) above.

III. Plea in Bar of NVKettler L.P. and Kettler & Scott, Inc.

The Kettler Defendants' argument is very simple. The Complainants had to have discovered the alleged fraud when they executed the Agreements. As they were executed more than two years before the Complainants first asserted their fraud claims, Kettler argues that the fraud claims are barred by Section 8.01-243 (A). However, under Section 8.01-249, a cause of action for fraud accrues when discovered or by the exercise of due diligence reasonably should have been discovered. The terms of the Agreements may be probative of when the Complainants discovered or by the exercise of due diligence should have discovered the alleged fraud. This Court cannot say as a matter of law that the Agreements are conclusive on this issue. The Complainants are entitled to a full and fair hearing on the issue. Gilmore v. Basic Industries, 233 Va. 485 (1987).

The Plea in Bar is denied at this time. However, the Kettler Defendants may continue to assert the statute of limitations as a bar to the fraud claim.

IV. Complainant's Motion for Leave to File a Second Amended Bill of Complaint

Considering the pleadings already filed, the argument and the representations of counsel in these causes, this Court will allow the Complainants leave to so amend. They may do so within twenty-one days after the date of this opinion letter. The defendants are granted twenty-one days after the filing of the second amended bill of complaint to file their responsive pleadings.

The Complainants have made the essential allegations against Bondy Way and Chevy Chase based merely "upon information and belief." Although this is not improper pleading under Virginia law, such allegations always raise a question in the mind of this judge of the extent of the pleader's knowledge of facts. It is even more questionable when the allegations, such as the ones referred to above, are as much conclusory as factual. Although the issue is not before the Court, it is certainly arguable that an allegation "based upon information and belief" does not meet the "well grounded in fact" requirement of Section 8.01- 271.1.

Contrary to what others may assert, it is not the opinion of this judge that Virginia is a notice pleading state. This belief is supported in an extensive discussion of Virginia pleading in Note, The Specificity of Pleading in Modern Civil Practice: Addressing Common Misconceptions, 25 U. Rich. Law Review 135 (1990). In pleading a cause of action, the pleader must not only allege all the elements of the cause of action but also must allege facts constituting the cause of action. It is not sufficient that the opposing party is on notice of the claim. The pleader must plead his case with specificity required by the Rules of Court and to the extent that it will survive a demurrer under Section 8.01-273.

*9 IV. Decree

The Court asks Mr. Hausler to prepare a decree consistent herewith to which any counsel may note an exception.

Not Reported in S.E.2d, 1991 WL 835182 (Va. Cir. Ct.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.