**Document Retrieval Result** 

Global One Communication, L.L.C. v. Ansaldi
Not Reported in S.E.2d, 2000 WL 1210511
Va.Cir.Ct.,2000.
May 05, 2000

Term ▶

(Cite as: 2000 WL 1210511 (Va. Cir. Ct.))

Not Reported in S.E.2d, 2000 WL 1210511 (Va. Cir. Ct.)
Only the Westlaw citation is currently available.

Circuit Court of Virginia.
◀**GLOBAL ONE**▶ COMMUNICATIONS, LLC.
v.
John A. ◀**ANSALDI &**▶ NTT America, Inc.
No. C165948.
May 5, 2000.

Dear Counsel:

SMITH, J.
*\*1*

(Cite as: 2000 WL 1210511, \*1 (Va. Cir. Ct.))

On January 14, 1998, employee John Ansaldi and Global One Communications, LLC (Global One), his employer, entered into a Non-Compete & Confidentiality Agreement (Non-Compete Agreement or Agreement). Paragraph 1 of the Agreement, entitled "Non Competition", provides, *inter alia:*
[John Ansaldi] agrees that ... through the earlier of December 31, 2000, or nine (9) months beyond [his] voluntary termination of employment with Global

(Cite as: 2000 WL 1210511, \*1 (Va. Cir. Ct.))

One, [he] will not directly or indirectly render[*sic* ] on behalf of a Competing Entity as defined [herein]-:
• Services similar to or substantially the same as services [he] performed on behalf of Global One; or
• Services in a capacity similar to or substantially the same as the capacity in which [he] served at Global One.
Further, the Agreement defines a Competing Entity as "any person or entity that competes, directly or indirectly through its affiliates, with Global One in the international telecommunications industry in one or more of the countries in which Global One has an office" (punctuation altered). Moreover, in its description of a Competing Entity, the Agreement specifically names Nippon Telegraph & Telephone Company as one of the companies included in this definition.
Mr. Ansaldi resigned April 1, 2000, and pursuant to the Agreement is restricted from engaging in competitive activities until December 31, 2000. On April 7, 2000, Complainant Global One filed suit on many counts and petitioned to temporarily enjoin its Mr. Ansaldi, from working with NTT America, Inc., (NTTA) in violation of his Non-Compete Agreement with Global One. On April 26, 2000, arguments were heard and evidence was presented and the matter was taken under advisement. On April 28, 2000, the Court informed counsel by telephone of its rulings and this writing is to formally memorialize the Court's findings

(Cite as: 2000 WL 1210511, \*1 (Va. Cir. Ct.))

and rulings.
Mr. Ansaldi and NTTA contest the validity of the Non-Compete Agreement and assert that such a determination should be made in accordance with Virginia law. Global One asserts that Delaware

law governs the Agreement, however, asserts that under both Virginia and Delaware the Agreement is enforceable.

To determine which law governs the contract, the court must first look to the Agreement itself. It is recognized in Virginia that "the *locus solutionis* [FN1] of a contract primarily depends upon the intention of the parties. It is a part of the principle of freedom of contract to choose the place where a contract shall be performed. This choice may be expressed in the contract itself; if not, it may be inferred from the surrounding circumstances." *Tate v. Hain,* 181 Va. 402, 411 (1943) (citing MINOR'S CONFLICT OF LAWS § 159). "[W]here parties to a contract have expressly declared that the agreement shall be construed as made with reference to the law of a particular jurisdiction, we will recognize such agreement and enforce it, applying the law of the stipulated jurisdiction." *Paul Bus. Sys. Inc. v. Canon U.S.A., Inc.,* 240 Va. 337, 342 (1990) (citing *Union Central Life Ins. Co. v. Pollard,* 94 Va. 146 (1896)).

> FN1. *Lex loci soutionis* literally means the law of the place of the solution. It is "the law in the light of which the contract is to be read

(Cite as: 2000 WL 1210511, *1 (Va. Cir. Ct.))

to determine the rights of the parties." MICHIE'S JURISPRUDENCE, *Conflict of Laws, Domicile & Residence* § 22 at 145.

*2

(Cite as: 2000 WL 1210511, *2 (Va. Cir. Ct.))

Paragraph 3 of the Non-Compete Agreement between Mr. Ansaldi and Global One explicitly states: "[T]his Agreement shall be governed and construed in all respects in accordance with the laws of the State of Delaware without regard to the conflict of laws provisions contained therein." The Defendants assert that this Court should ignore this provision as there are insufficient contacts between the parties and Delaware to support this choice. The Defendants also assert that the contract should be found void under Virginia law because the parties were not in equal bargaining positions when this agreement was struck, and therefore, it is a contract of adhesion.

As the Agreement-by its own terms-specifically excludes Delaware conflict of law provisions, the validity and effect of the choice of law provision of the Agreement is determined in accordance with Virginia law. Applying Virginia law to the Defendants' first argument, the Court finds it to be without merit. It is alleged in the Bill of Complaint, and was not disputed at the hearing, that Plaintiff is a Delaware corporation. This is sufficient connection to that state to support a choice of law provision designating Delaware law as controlling the Agreement.

With regard to the Defendants' second argument, Virginia does not presume the

(Cite as: 2000 WL 1210511, *2 (Va. Cir. Ct.))

unenforceability of contracts entered into by parties of unequal bargaining power but rather presumes contracts to be valid, and the burden is on the party challenging the validity to establish that the provision in question is unfair, unreasonable, or affected by fraud or unequal bargaining power. *See Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.,* 240 Va. 337 (1990). The evidence presented at the hearing was simply insufficient to establish the exceptional circumstances necessary to persuade the Court that the parties' deliberate selection of Delaware law should be ignored. Accordingly, this court applies Delaware law to the analysis of the validity and operation of the Non-Compete Agreement at issue in this case.

The examination of the validity of a non-competition agreement in Delaware is multifaceted. The court determines the enforceability of a non-competition clause using a four-prong test considering whether: (1) the duration of the provision is reasonably limited, (2) the provision's geographical reach is reasonable under the circumstances, (3) the purpose of the provision is to protect legitimate interests of the employer, and whether (4) the operation of the provision is no broader than necessary to protect those interests. *See Research & Trading Corp. v. Pfuhl, et al.,* Civ. A. No. 12527, 1992 WL 345465, at *6 (Del. CH. Oct. 8, 1992); *see also McCann Surveyors, Inc. v. Evans,* 611 A.2d 1 (Del. Ch.1987). After finding an agreement not to compete meets its four-part test, a Delaware court then balances the equities. "If it

(Cite as: 2000 WL 1210511, *2 (Va. Cir. Ct.))

appears that the interests the employer seeks to protect are slight or ephemeral while the consequences of specific enforcement to the employee are grave, equity may leave the plaintiff to

pursue his legal remedies and decline to grant the special remedy." *Id.*

*\*3*

(Cite as: 2000 WL 1210511, \*3 (Va. Cir. Ct.))

In this case, the Non-Compete Agreement between Mr. Ansaldi and Global One is reasonable under the Delaware scheme. [FN2] *See Research & Trading Corp. v. Pfuhl, et al.,* Civ. A. No. 12527, 1992 WL 345465, at \*6 (Del. CH. Oct. 8, 1992).

> FN2. Notably, the Non-Compete Agreement between Mr. Ansaldi and Global One would withstand scrutiny under a Virginia scheme as well. Virginia's analysis is a similar three-prong test, wherein the court examines a restrictive employment covenant under the following criteria.
>
> (1) Is the restraint, from the standpoint of the employer, reasonable in the sense that it is no greater than necessary to protect the employer in some legitimate business interest?
>
> (2) From the standpoint of the employee, is the restraint reasonable in the sense that it is not unduly harsh and oppressive in curtailing his legitimate efforts to earn a livelihood?
>
> (3) Is the restraint reasonable from the standpoint of sound public policy?
>
> *New River Media Group, Inc. v. Knighton,* 245 Va. 367, 369
>
> (Cite as: 2000 WL 1210511, \*3 (Va. Cir. Ct.))
>
> (1993) (finding an agreement's geographic limitation not unduly burdensome considering the employer had approximately 300 offices worldwide); *cf. Roanoke Eng. Sales v. Rosenbaum,* 223 Va. 548, 552, 290 S.E.2d 882, 884 (1982).

Applying each prong of the Delaware analysis, the Court finds as follows:
(1) Its duration is not unduly oppressive. The restriction on Mr. Ansaldi extends only through December 31, 2000, or nine months beyond his resignation with Global One.
(2) The geographic extent is reasonable. Global One is an international telecommunications provider. It deals with primarily Fortune 200 companies to provide services throughout the world. "The reality is that it is the employer's goodwill in a particular market which is entitled to protection. If [the] market, or more accurately, the employer's customer base, extends throughout the nation, or indeed even internationally, and the employee would gain from employment some advantage in any part of that market, then it is appropriate that an employee subject to a non-competition agreement be prohibited from soliciting those customers on behalf of a competitor regardless of their geographic location." *See Research & Trading Corp. v. Pfuhl, et al.,* Civ. A. No. 12527, 1992 WL 345465, at \*9 (Del. CH. Oct. 8, 1992).
(3) The agreement serves legitimate economic interests of Global One. While

(Cite as: 2000 WL 1210511, \*3 (Va. Cir. Ct.))

with Global One, Mr. Ansaldi had access to important competitive and proprietary information and engaged in specialized and high-level contacts with Global One customers. Mr. Ansaldi, as a senior manager, coordinated the Pacific & Asia sales team, its technical support, and the necessary support staff. Moreover, Mr. Ansaldi was specifically responsible for supporting Global One's response to one of its major customers, Exxon-Mobil. Evidence established that, as part of a Global One team, Mr. Ansaldi was to attend a conference in Singapore soliciting business with Exxon-Mobil, but instead went as part of the NTTA team in a substantially similar capacity, precisely the type of competition contemplated by the agreement.
(4) The agreement is no broader than necessary to protect Global One's interests. The Non-Competition Agreement does not unduly restrict Mr. Ansaldi's livelihood after he leaves Global One. He is not prohibited from working in the telecommunications industry, provided he does not render substantially similar services to a Competing Entity or serve a Competing Entity in a substantially similar capacity. The market place in which he operated in his capacity with Global One is international. Given that the communications services provided by the corporate parties involved are (or at least can be) international, and also given the multinational nature of the companies involved, the fact that Mr. Ansaldi may have an office in a specific local region of the United States

does not mean that he cannot render services to companies in Asia, Europe, or

(Cite as: 2000 WL 1210511, *3 (Va. Cir. Ct.))

anywhere else in the world. Although Mr. Ansaldi testified that his job with NTTA is as mid-Atlantic manager and that his territory stretches from Pennsylvania to Georgia and only along the eastern coast, this is belied by his initial assignment for NTTA in Singapore. Additionally, evidence was presented that information proprietary to Global One was emailed by Mr. Ansaldi to himself and to his wife (although he further testified that he did not receive that information), and this information was, in large part, related to worldwide operations of Global and Exxon.

*4

(Cite as: 2000 WL 1210511, *4 (Va. Cir. Ct.))

Additionally, to address the balancing of equities, the court is not persuaded that the equities are so unbalanced as to require voiding the provision. As consideration for his agreeing to the terms of the provision, Mr. Ansaldi was included in a Special Incentive program which paid him ten percent (10%) of his annual salary in January, plus forty to sixty-five percent (40- 65%) of his annual salary in March, the exact amount of the total bonus depending upon his performance rating.

In conclusion, applying Delaware law, this court finds that the Non-Compete Agreement between Mr. Ansaldi and Global One is valid and enforceable as drafted. Considering the nature of the business involved, the terms of the covenant are reasonable. The Court further finds that Global One has a substantial likelihood of prevailing on the merits of its Bill of Complaint, and that there is no adequate remedy at law available to Global One-

(Cite as: 2000 WL 1210511, *4 (Va. Cir. Ct.))

particularly with regard to the disclosure of confidential information to harm to Global One's business reputation, and by the use of proprietary information to allow NTTA to target Global customers and thereby cause Global One to lose competitive advantage. Accordingly, it is the ruling of the court that the injunction is granted. Mr. Ansaldi is enjoined from rendering services to or on behalf of a Competing Entity that are similar to or substantially similar to the services he performed on behalf of Global One. Mr. Ansaldi is enjoined from rendering services to or on behalf of a Competing Entity in a capacity similar to or substantially similar to the same capacity in which he served Global One. He is further prohibited from disseminating any proprietary information of Global One, which came into his possession during his employment with Global One. This injunction includes dealings with a Competing Entity as defined by the Non-Competition Agreement and also specifically includes any dealings with Exxon-Mobil. Global One shall be required to post a cash or corporate surety bond equal to five months of Mr. Ansaldi's gross income from employment with NTTA.

Counsel should set trial on the permanent injunction within 60 days of this order.

Va.Cir.Ct.,2000.

◄Global One► Communication, L.L.C. v. ◄Ansaldi►

Not Reported in S.E.2d, 2000 WL 1210511 (Va. Cir. Ct.)

END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

◄ Term

Print/Deliver   Cite List

Help © 2005 West