UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| DNM SEAFOOD, INC. | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| v. | )    Civil No. 05-2181EGS |
| | ) |
| PRUITT'S SEAFOOD, INC., *et al.* | ) |
| | ) |
| **Defendants** | ) |

REPLY MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS

I.    APPLICABLE LAW

Virginia law governs the claims in this case.  This case involves an Agreement with a clear choice of law provision that the "Agreement shall be governed by the laws of the Commonwealth of Virginia." *See* Sales Agreement (Ex. A to Defs.' Mem.) ¶ 15.

"To determine which law governs the contract, the court must first look to the Agreement itself." *Global One Comm. v. Ansaldi & NNT Amer.*, 2000 WL 1210511, at *1 (Va. Cir. Norfolk 2000) (copy attached).  "Where ... the parties to the contract have themselves expressly declared that their contract shall be held and construed as made with reference to a certain jurisdiction, that shows by what law they intended the transaction to be governed." *Union Central Life Ins. Co. v. Pollard*, 94 Va. 146, 26 S.E. 421, 422 (1896).

> It is always to be remembered that in obligations it is the will of the contracting parties, and not the law, which fixes the place of fulfillment--whether that place be fixed by express words or by tacit implication--as the place to the jurisdiction of which the contracting parties elected to submit themselves.  In every forum, a contract is governed by the law with reference to which it is made.

*Id.*  The Virginia Supreme Court has explained: "Where parties to a contract have expressly declared that the agreement shall be construed as made with reference to the law of a particular

jurisdiction, we will recognize such agreement and enforce it, applying the law of the stipulated jurisdiction." *Paul Bus. Sys. Inc. v. Canon U.S.A., Inc.,* 240 Va. 337, 342 (1990).

Nonetheless, defendant contends that District of Columbia law should apply to its fraud claims. Pl.'s Opp. ¶ 7. Ironically, plaintiff cites Virginia law to support this contention. Pl.'s Opp. ¶ 7 (citing *McMillan v. McMillan*, 219 Va. 1127, 2532 S.E.2d 662 (1979)). Plaintiff asserts that the tort occurred in the District, and that Virginia law applies the "rule that the substantive rights of the parties are governed by the law of the situs where the tort occurred." Pl.'s Opp. ¶ 7.

Plaintiff asserts that the alleged misrepresentations occurred in the District, that the underlying transaction involves the assets of a District business by a District corporation, with the resulting harm in the District. Pl.'s Opp. ¶ 7. These assertions are not accurate. A majority of the discussions involving the sale of the business, during which plaintiff contends the alleged misrepresentation(s) took place, occurred in Virginia. *See* Pl.'s Opp. ¶ 5; Pruitt Aff. ¶ 3 (Ex. A to Motion to Transfer) (copy attached).[1] Further, Pruitt Seafood is a Virginia corporation—not a District corporation. *See* Pruitt Aff. ¶ 2. Finally, the underlying transaction took place in Virginia, not in the District. As provided in the Sales Agreement, and as attested to by Defendant Stewart Pruitt, the contract documents were executed in Virginia and settlement occurred in Virginia. *See* Sales Agreement ¶ 7; Pruitt Aff. ¶ 3. Nonetheless, the factors cited by plaintiff, including the place of the business assets and the state of incorporation of the plaintiff are not determining factors in ascertaining what law is applied, as discussed below.

Plaintiff cites *Insteel Industries* to support its argument that District of Columbia law should apply to its fraud claims. Pl.'s Opp. ¶ 7. *Insteel Industries* makes it clear that "the settled

---

[1] Plaintiff cites the Affidavit in its Opposition to Motion to Dismiss, but did not attach the Affidavit as a new exhibit. For the Court's convenience, a copy of the Affidavit is attached to this Reply.

choice of law rule for tort claims in Virginia is *lex loci delicti*—the law of the place of wrong." 276 F.Suppp.2d 479, 486 (E.D. Va. 2003). However, the Court explains that "[t]he place of the wrong for purposes of the *lex loci delicti* rule is defined as ***the place where the last event necessary to make an actor liable for an alleged tort takes place***, even if the actor has no control over the location of the event." *Id.* (emphasis added).

In this case, plaintiff's alleges in its fraudulent inducement claim that it "was induced to execute the contract to purchase the seafood business assets" and that "Settlement took place on May 4, 2004." Pl.'s Opp. ¶¶ 10, 13. The execution of the contract documents and the Settlement occurred in Annandale, Virginia. *See* Sales Agreement ¶ 7; Pruitt Aff. ¶ 3. Under plaintiff's own pleading, Virginia is the place of the wrong.

Nonetheless, plaintiff's claims would also fail under District law. As asserted in Plaintiff's Opposition, the elements of fraud are the same in the District as they are in Virginia. Pl.'s Opp. ¶ 8 (citing *D'Ambrosio v. Colonnade Council of Unit Owners*, 717 A.2d 356, 361 (D.C. 1998)); *see also Hercules & Co., Ltd. v. Shama Rest. Corp.*, 613 A.2d 916, 923 (D.C. App. 1992).

## II.    PLAINTIFF HAS NOT STATED A CLAIM FOR FRAUDULENT INDUCEMENT UNDER RULES 9(b) AND 12(b)(6)

### A.    Plaintiff Failed to Allege the Time, Place, Content, and Falsity of Alleged False Statements

As set forth in defendants' Motion to Dismiss and Memorandum in Support, plaintiff has not set forth the time, place, content, or falsity of the alleged representations which form the basis of the fraudulent inducement claim with the specificity required by Rule 9(b). *Sweeney Co. v. Engineers-Constructors, Inc.*, 109 F.R.D. 358, 360 (E.D. Va. 1986) (finding that allegation of fraud without any specific designation in the pleadings as to "what false statements were made

3

by plaintiff, when they were made, wherein they were material or in what respect they were false" was a clear violation of Rule 9(b)).

Defendants' argument regarding the alleged misrepresentation is not simply that plaintiff "opted to paraphrase" Pruitt's statements and "omitted the exact time" of the alleged misstatements, as contested by plaintiff. *See* Pl.'s Opp. ¶¶ 1, 10. Defendants' argument is that plaintiff has failed to plead with particularity the circumstances constituting fraud, as required under federal law, Virginia law, and District of Columbia law.[2]

Plaintiff also fails to address the various economic concepts set forth in defendants' Motion regarding the distinction between the income of Mr. Pruitt and the profits of the business. Even if properly alleged and factually true, the post-sale *profits of the business* cannot form the basis of plaintiff's conclusion or allegation that Pruitt's representation of *his income* was false.

Plaintiff does not clearly allege that Mr. Pruitt's alleged were false.  Instead, plaintiff alleges that based on post-closing operation of the business under new management, "plaintiff has ***concluded*** that the pre-contract and pre-settlement statements by Stewart B. Pruitt as to the earnings of the business were false."  Compl. ¶ 14 (emphasis added).

Further, Plaintiff makes no reference in its pleading as to when the statement(s) occurred but rather asks the Court to assume this connection.  Plaintiff merely alleges that the discussions leading up to the sale of the business occurred over a two-year time period.  Compl. ¶ 5.  Plaintiff argues without citation that its omission of the exact time and paraphrasing of the alleged false statement are "insufficient to justify dismissal of this case."  Pl.'s Opp. ¶ 10.  In order to assess

---

[2] Plaintiff asserts that District law applies to its fraud claims.  As discussed previously, Virginia law applies to all of plaintiff's claims.  Nonetheless, District law is consistent with Virginia and federal law on the issue of fraud. *Hercules & Co., Ltd. v. Shama Rest. Corp.*, 613 A.2d 916, 923 (D.C. App. 1992) (explaining that "common law fraud is never presumed, and a plaintiff alleging it must do so with particularity" and setting forth elements of fraud:

the truth or falsity of the statement(s), and to inform defendants of the nature of the claim, both the Court and the defendant need to know the particulars of the alleged misrepresentation.

Plaintiff asserts that the test for sufficiency of a fraud pleading is whether the adverse party could be "taken for surprise" and contends that "it is unnecessary for the pleader to descend into statements giving details of proof." Pl.'s Opp. ¶¶ 2, 3. Plaintiff cites *CaterCorp* for this proposition. However, *CaterCorp* did not involve a **fraud** claim. *CaterCorp v. Catering Concepts, Inc.*, 246 Va. 22, 431 S.E.2d 271 (1993) (involving tortious interference, conspiracy, and breach of employment duties claims).

The legal standard for pleading a fraud claim is unmistakable: "In all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." Fed R Civ. P. 9(b). In order to meet the heightened pleading requirements under Rule 9(b), plaintiff must allege the time, place, and content of each false representation, the fact represented, and what was gained or given up as a consequence of the alleged fraud. *See In re U.S. Office Prods. Co. Secs. Litigation*, 251 F. Supp. 2d 77, 100 (D.D.C. 2003); *Owen v. Commercial Union Fire Ins.*, 211 F.2d 488 (4th Cir. 1954).

Plaintiff argues that it has plead a *prima facie* case of fraud because it has alleged the elements of fraud. Pl.'s Opp. ¶ 4. However, plaintiff conflates the distinction between the legal elements of a cause of action and the factual contentions necessary to plead each of the elements with particularity. *United States ex rel. McCready*, a case cited by plaintiff, makes clear that while "a plaintiff need not plead his legal theory of fraud in the complaint," the complaint ***must*** plead "the facts that form the basis for the fraud." *United States ex rel. McCready v.*

---

(1) false representation (2) made in reference to a material fact (3) with knowledge of its falsity (4) with intent to deceive (5) action that is taken in reliance upon the representation (6) that defrauded party's reliance be reasonable).

*Columbia/HCA Healthcare Corp.*, 251 F. Supp. 2d 114, 118 (D.D.C. 2003). Even under District law: "To be entitled to a trial on the merits of a fraud claim, a plaintiff must allege such facts as will reveal the existence of all the requisite elements of fraud. Allegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient." *Hercules & Co., Ltd. v. Shama Restaurant Corp.*, 613 A.2d 916, 923 (D.C. App. 1992) (quoting *Bennett v. Kiggins*, 377 A.2d 57, 59-60 (D.C. 1977)).

Requiring plaintiff to meet the heightened pleading requirement under the law can hardly be characterized as defendants' claiming "ignorance of the substance and timing of the matters with which they are charged." *See* Pl.'s Opp. ¶ 5. Plaintiff also argues that "[s]ince defendant Pruitt evidently recalls many of these 'preliminary discussions' which are at the heart of plaintiff's fraud claim, it is disingenuous to argue that the complaint fails to advise the defendants of the basic nature of the claim." Pl.'s Opp. ¶ 6. Defendants' knowledge of the discussions and sale of the business are hardly synonymous with fraud or a false representation, and in no way affect plaintiff's responsibility to plead its fraud claim with particularity.

Plaintiff contends that an allegation of the time period during which a fraud occurs is sufficient for pleading purposes, citing *United States ex rel. McCready*, 251 F. Supp. 2d at 117. Pl.'s Opp. ¶ 9. However, *McCready* involved a "scheme" or "system" of fraudulent acts in which a hospital, its management company, and individual employees engaged in a "widespread" practice where they "manipulated patient stays in order to maximize reimbursement." *Id.* at 115-17. The court found that plaintiff's "complaint describes the time period during which the allegedly fraudulent acts were perpetrated." *Id.* at 117. The case at hand involves plaintiff's allegation of a specific representation made by one man—not a scheme

of fraudulent acts which occurred over a period of time. Thus, plaintiff's allegations of a two-year time period is not sufficient for pleading purposes.

Plaintiff further tries to escape the specific pleading requirements of fraud—the false representation—by asserting that it cannot know the information because it is within defendants' control. The falsity of a representation in a fraud claim is not something that should be left to discovery, as plaintiff contends. It is the heart of the fraud claim, it is required to be alleged with particularity, and plaintiff's failure to allege such is fatal to its fraudulent inducement claim.

The cases relied upon by plaintiff for the proposition that an "upon information and belief" allegation in a pleading is acceptable when the information is in the control of the defendant do not apply to this case. Both cases involve securities fraud claims brought by investors and dealt with undisclosed information that was "exclusively" or "peculiarly" within the control of defendant. *See Kowal v. MCI Comm. Corp.*, 16 F.3d 1271, 305 U.S.App.D.C. 60 (D.C. Cir. 1994) and *In re Craftmatic Securities Lit. v. Kraftsow*, 890 F.2d 628 (3d Cir. 1990).

*Kowal* and *Craftmatic* involved claims of securities fraud under §10 of the Securities Exchange Act and the information under defendant's control was undisclosed information in the context of the sale of securities. *Id.* In fact, in *Kowal*, the Court found that the defendant "had no duty to disclose" the information at issue to the investor. *See Kowal*, 16 F.3d at 1277, 305 U.S.App.D.C. at 66. Defendants' knowledge of information alleged by plaintiff is not the same as information that is "exclusively" or "peculiarly within defendant's knowledge or control." *See Kowal*, 16 F.3d at 1279; *Craftmatic* 890 F.2d at 645. Plaintiff in this case is claiming that the information under defendants' control is information regarding the profits of the business which he purchased.

Further, both cases cited by plaintiff explain that even when a plaintiff is permitted to

7

base such allegations "on information and belief" this "require[s] an allegation in the pleading that the necessary information lies within defendant's control, and that such allegations must also be accompanied by a statement of the facts upon which the allegations are based." *Kowal*, 16 F.3d at 1279. Plaintiff raises an exception, but the authority it cites indicates that the exception does not apply in this situation, and that plaintiff has nonetheless failed to meet the requirements of the exception.

Plaintiff suggests in a footnote that the Court should allow plaintiff leave to amend its complaint accordingly, rather dismissing its claim on these grounds, citing *Anderson v. USAA Casualty Insurance Company.* Pl.'s Opp. ¶ 13 (citing 221 F.R.D. 250 (D.D.C. 2004)). However, *Anderson* focuses on the heightened requirements of pleading a fraud claim, explaining that a plaintiff "must satisfy his burden by stating with particularity the supporting factual allegations for his claim." *Id.* at 253. The Court pointed out that "Rule 9(b)'s particularity requirement ensures that the opponent has notice of the claim, prevents attacks on his reputation where the claim for fraud is unsubstantiated ...." *Id.*

Therefore, it is clear that such an exception applies where the information lies within the exclusive control of defendant and where allowing plaintiff to amend can cure the deficiency in the pleading. *Id.* The case at hand involves a business transaction between two corporations, and the information plaintiff has failed to allege is not supporting information, but is the very heart of the claim—the falsity of the representation. Without this foundation, a fraud claim simply cannot be alleged.

Plaintiff cites *Lockwood v. Christakos*[3] for the proposition that plaintiff's *conclusion* of

---

[3] Plaintiff claims that this case is controlling authority, citing *M.A.P. v. Ryan*, 285 A.2d 310 (1971). While *M.A.P.* addresses the precedential value of the decisions of the Court of Appeals, it does not make *Lockwood* controlling to the case at hand.

fraud, based upon post-closing operations of the business, is sufficient. Pl.'s Opp. ¶ 13 (citing *Lockwood v. Christakos*, 181 F.2d 805, 86 U.S.App.D.C. 323 (1950), *aff'd* 194 F.2d 897, 90 U.S.App.D.C. 211 (1952). To the contrary, *Lockwood* involved a fraud claim based upon *evidence* of the pre-sale and post-sale profits of the business, including the books of the company, compared with its published advertisements of its profits. 181 F.2d at 808, 86 U.S.App.D.C. at 326; *Christakos*, 94 F.2d 897, 90 U.S.App.D.C. at 212-13. Further, *Lockwood* had nothing to do with plaintiff's conclusions about fraud based upon post-closing operation of the business being sufficient to allege the element of false representation. The issue in *Lockwood* was whether the trial court had considered all of the pertinent advertisements which constituted the inducement in that case. *Id.* at 808, 86 U.S.App.D.C. at 326.

Further, plaintiff never alleges that Pruitt made any representation concerning "earnings of the business." Instead, plaintiff alleges that Pruitt made representations concerning the income he derived from his employment with and ownership of Pruitt's Seafood. *See* Compl. ¶ 14. Plaintiff's conclusions concerning earnings of the business based upon post-closing performance of the business under new management do not support the conclusion that some statement made by Pruitt at some unspecified time during the two years leading up to execution of the Sales Agreement concerning earnings he derived from his ownership of and employment by Pruitt's Seafood was false.

## B.    Plaintiff Failed to Allege Materiality

Plaintiff claims that the alleged representations of Stewart Pruitt were significant enough to induce him to enter into this transaction. Compl. ¶ 10. This transaction was one about which the parties engaged in discussions for two years and involved the execution of several

9

documents, including a Sales Agreement, Promissory Note, Management Agreement, and Lease Agreement. *See* Compl. ¶¶ 5, 8, 9, 13, 23; Pl.'s Opp. ¶ 36 and Exs. 2 & 3. Not surprisingly, plaintiff was represented by counsel in the transaction. *See* Sales Agreement ¶ 7. In fact, the Sales Agreement specifically included a section regarding contingencies. *See* Sales Agreement ¶ 9. However, Mr. Pruitt's tax records, earnings, or financial records were not the subject of any contingency.

In addition, the Sales Agreement specifically provided: "This Agreement represents the entire agreement of the parties relating to the purchase and sale of the Business. **All prior negotiations and agreements between the parties are merged in this Agreement and there are no understandings or agreements other than those incorporated herein.**" Sales Agreement ¶ 14 (emphasis added). Pursuant to Paragraph 14, statements made during the course of negotiations, including Pruitt's alleged representations, were merged into the Sales Agreement. If Pruitt's alleged statements were material, plaintiff would have included these "representations" in the Sales Agreement as provided by Paragraph 14.

*Hercules & Company v. Shama Restaurant Corporation*, a District of Columbia case, is instructive in this regard:

> Each side presumably had the opportunity to make a variety of representations, promises, and offers. The parties ended up with a contract which did not include the representations which Hercules now says Shama made. *If Hercules considered these assurances important enough to induce it to agree to the contract..., it could have conditioned its agreement on the explicit inclusion of those representations in the contract*. If Shama or Rippeteau refused to go along, Hercules could have walked away from the deal. Since Hercules did none of these things, but instead signed the contract and got the job, it is bound by the terms of the instrument to which it affixed its name ....

613 A.2d 916, 932-33 (D.C. App. 1992). The rationale of the court is applicable to the case at hand:

Similarly, in a case in which the court decided that the plaintiff *could not have reasonably relied on oral assurances which were not included in the final written contract*, it was held that if the text of an agreement could be undermined on the basis of allegations of what took place during negotiations, [c]ontracts would become no more than presumptive statements of the parties' intentions, instead of legally enforceable agreements. And the give-and-take of negotiations would become meaningless if, after making concessions in order to obtain other contractual protections, a *knowledgeable party is later able to reclaim what it had given away by alleging that it had, in fact, relied not on the writing but on the prior oral statements*.

*Id.* at 934.  As the court explained in *Hercules*, if the plaintiff were permitted to avoid its obligations under the contract "simply upon this mere cry of fraud in the inducement, the reliability of agreements ... would be seriously undermined." *Id.* at 935.

Plaintiff argues that the merger clause in the Sales Agreement is of no effect because plaintiff has alleged a fraudulent inducement claim.  Plaintiff cites an excerpt from *Strand v. Griffith* to support its argument.  Pl.'s Opp. ¶ 16 (citing *Strand v. Griffith*, 97 F. 854, 858 (8th Cir. 1899)).  However, *Strand* is distinguishable from the case at hand in many ways.  First, *Strand* involved a conspiracy "consummated by a series of gross frauds, false representations, and fraudulent devices and practices, which are *set out at length and with particularity*, and show a succession of frauds and deceits of the grossest character." *Id* at 855.  The court further points out that defendants in that case did not "contend that the representations made by the defendants to the plaintiff touching the value, quantity, and quality of the goods were not false and fraudulent." *Id.*

Further, the contract provision in *Strand* was not a typical merger clause, like the Sales Agreement at issue.  The court found that the contract provision in *Strand* contained "unusual and suspicious declarations," asserting that the stock had been inspected, that the party accepted the condition of the goods as is, "waiving all claim for damaged goods, shortages, and prices." *Id.* at 858.  The court further explained that the contract was obtained "for the sole purpose of

11

protecting the defendants from an action for damages for the fraud which they were conscious they were perpetrating upon the plaintiff." *Id.* The court explained: "The law will not give effect to a stipulation to intended to grant immunity to iniquity and fraud." *Id.* The decision in *Strand* has no application to the case at hand.

Plaintiff also cites *George Robberrecht Seafood* for its assertion that Virginia law does not allow a waiver or merger clause to operate as a bar to a fraud in the inducement claim. Pl.'s Opp. at ¶ 17 (citing *George Robberrecht Seafood, Inc. v. Maitland Bros. Co., Inc.*, 220 Va. 109, 255 S.E.2d 682 (1979)). However, *George Robberrecht Seafood* also dealt with a waiver or disclaimer of *all* liability—not a merger clause. *Id.* at 112, 255 S.E.2d at 683. This principle does not apply in this case.

*Bank of Montreal*, cited by plaintiff for the same proposition, likewise involved a waiver of *all* liability—not a merger clause. *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 828 (1999). Contrary to plaintiff's contention, the court in *Bank of Montreal* explains that even where plaintiff has proven a fraud in the inducement claim such that the contract is voidable, this "does not make the contract terms irrelevant." *Id.* at 829. In addition, the court reaffirms that "when a plaintiff makes a partial inquiry, with full opportunity of complete investigation, and elects to act upon the knowledge obtained from the partial inquiry, he cannot claim reliance." *Id.* at 827.

In support of its final argument concerning materiality, plaintiff cites 27 A.L.R.2d 14 § 3 for the principle that "ordinarily it is held that representations concerning past or present profits or income regarding the subject matter of a contract are material." Pl.'s Opp. ¶ 18. However, plaintiff cites no Virginia authority in support of this principle. In fact, 27 A.L.R.2d 14 § 3, which includes a collection of various cases that follow this rule, includes no Virginia cases.

### C.    Plaintiff Failed to Allege That the False Statement Was Made Intentionally and Knowingly

Because plaintiff has failed to sufficiently allege a false representation of a material fact, plaintiff cannot allege that such representation was made intentionally and knowingly. The fact that plaintiff does not even know if Mr. Pruitt's alleged statements were true or false precludes any good faith allegation that Mr. Pruitt *intentionally and knowingly* made a false representation.

Plaintiff states that both District Rules and the Federal Rules allow that "a charge of fraud may be made by stating the facts from which the fraud or mistake would necessarily be implied" citing the rule that "technical forms of pleading are not required." Pl.'s Opp. ¶ 20 (citing D.C. R. R.C.P. Rule 8(e)). However, District Rules and the Federal Rules provide that when a plaintiff is alleging *fraud*, it must be plead with particularity. D.C. R. R.C.P. Rule 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). Plaintiff merely argues that the element of false statement made intentionally and knowingly is "inferable," "inherent," and "implied." *See* Pl.'s Opp. ¶ 20.

Further, Plaintiff's statement that "Defendants' knowledge of falsehood is inherent in the allegation of intentional and malicious representation, as one could not intend to make a false statement without the required knowledge of falsehood" speaks to the legal elements of fraud, not to "the circumstances constituting fraud," which plaintiff is required to allege with particularity. *See* Pl.'s Opp. ¶ 20.

### D.    Plaintiff Failed to Allege An Intent to Mislead

Because plaintiff does not know if Mr. Pruitt's alleged statements were true or false, there is no basis for its conclusory assertion that Mr. Pruitt intentionally and knowingly made a false representation with the *intent to mislead plaintiff.* Plaintiff again alleges that the element of intent to mislead is "inferable" without any citation whatsoever. *See* Pl.'s Opp. ¶ 21. Plaintiff's

assertion that particular elements of its fraud claim are "inferable" "implied" or "inherent" in other elements flies in the face of the purpose of requiring fraud to be plead with particularity.

> [T]he requirement in Rule 9(b) is necessary to safeguard potential defendants from lightly made claims charging the commission of acts that involve some degree of moral turpitude. The notion is that a heightened pleading requirement imparts a note of seriousness and encourages a greater degree of pre-institution investigation by the plaintiff.

Wright & Miller, *supra*, § 1296 at 31.

### E.    Plaintiff Failed to Allege Reliance

Plaintiff has asserted that it *concluded* that Pruitt's statement could not have been true, based upon the performance of the business under new ownership since plaintiff purchased and began operating it. *See* Compl. ¶ 14. The fact that plaintiff asserts that it was induced into executing the Sales Agreement because it has now concluded the statement of Stewart Pruitt must have been false, is not sufficient to establish that it was misled and consequently relied upon a false representation of the other party.

It is not enough for a plaintiff in a fraud action to show that he acted to his detriment in response to the defendant's misrepresentation. *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999) (interpreting Virginia law). "[O]ne who seeks to hold another in fraud must clearly show that he has relied upon the acts and statements of the other." *Harris v. Dunham*, 203 Va. 760, 767, 127 S.E.2d 65, 70 (1962). Further, the law provides that plaintiff's reliance upon the representation must be reasonable and justified. *Hitachi*, 166 F.3d at 629. Even if the facts alleged by plaintiff are taken as true, plaintiff has alleged no facts to demonstrate that its reliance upon the alleged representation was reasonable and justified, as required by law.

In rebuttal regarding the element of reliance, plaintiff merely challenges defendants' authority for the contention that plaintiff must plead reliance with factual particularity. Pl.'s Opp. ¶ 22 ("Defendants offer no authority for the proposition that a factual description of the mental processes resulting in reliance must be pled in order to set forth a prima facie cause of action for fraud."). Although plaintiff repeatedly attempts to shift its burden to defendants, the responsibility to allege fraud with particularity remains plaintiff's.

**F.     Plaintiff Failed to Allege Resulting Damage**

Because plaintiff has failed to allege the first five elements of fraud, it necessarily follows that it failed to sufficiently allege damage resulting from reliance upon a false representation made intentionally and knowingly by the other party with the intent to mislead. *See In re U.S. Office Prods. Co. Secs. Litigation*, 251 F. Supp. 2d 77, 100 (D.D.C. 2003) ("Accordingly, fraud claims must plead facts capable of establishing each of the requisite elements of fraud. Allegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient."). Plaintiff's only argument in opposition again seeks to shift the burden to defendants and avoid pleading this particular element of fraud.

**III.   PLAINTIFF'S CLAIMED RELIANCE ON ALLEGED MISREPRESENTATIONS FORMING THE BASIS FOR THE FRAUDULENT INDUCEMENT CLAIM (COUNT I) WAS UNREASONABLE AS A MATTER OF LAW.**

In a fraudulent inducement claim, plaintiff's reliance upon the representation must be reasonable and justified. *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir. 1999) (interpreting Virginia law). The touchstone of reasonableness is prudent investigation. *Hitachi*, 166 F.3d at 629. "In circumstances where a prudent buyer would have conducted an investigation and, thereby, discovered the seller's misstatement, a buyer who fails to make such an investigation may not assert fraud based on the factual misrepresentation." *Hoover Universal,*

*Inc. v. Brockway Imco, Inc.*, 809 F.2d 1039, 1044 (4th Cir. 1987) (applying Virginia law). In fact, when two parties are dealing at arm's length regarding the sale of property, it is the duty of the buyer to make inquiry regarding the true status of affairs and his failure to do so is negligence. *Costello v. Larsen*, 182 Va. 567, 571, 29 S.E.2d 856, 858 (1944).

The Virginia Supreme Court's decision in *Harris v. Dunham* is instructive in this case. 203 Va. 760, 127 S.E.2d 65 (1962). Similar to DNM's claim, the "gist of Dunham's complaint ... was that it was misrepresented to him that the corporation 'was in good condition and would bring in a net profit of $25,000.00 per year.'" *Id.* at 770-71, 127 S.E.2d at 72. Also like the case at hand, Dunham inquired of the officers about the financial affairs of the business, specifically, whether the business would pay $25,000.00 a year as plaintiffs claimed. *Id.* at 768, 127 S.E.2d at 70. The Court found that Dunham "made a partial inquiry, with full opportunity of complete investigation and ascertainment of all the facts, and then elected, not to exhaust the readily available sources of information, but to act upon the knowledge obtained from his partial inquiry." *Id.* at 769, 127 S.E.2d at 71. The court held that Dunham was therefore precluded from relying upon the misrepresentation of plaintiffs, and was barred from recovery. *Id.* at 767, 127 S.E.2d at 70.

Plaintiff contends that the issue of reliance is nothing "other than a factual matter to be resolved at trial." Pl.'s Opp. ¶ 25. Plaintiff also asserts: "Clearly, there is not record evidence at this point to establish whether plaintiff had equal access to defendant's financial information [or] whether partial investigation by the plaintiff precludes reliance on Stewart Pruitt's statements .... Thus, dismissal of the plaintiff's fraud claim is premature." Pl.'s Opp. ¶ 26. However, plaintiff ***alleges*** in its Complaint that plaintiff commenced an investigation by asking Pruitt for his tax records. Compl. ¶ 12. In deciding this Motion, the Court must accept the factual allegations in

the complaint, and should dismiss any claim under Fed. R. Civ. P. 12(b)(6) if it appears that the plaintiff can prove no facts in support of his claims which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Plaintiff cites *Cassidy v. Owen* for the proposition that reasonableness is generally a factual issue and should preclude this Motion to Dismiss. Pl.'s Opp. ¶ 24 (citing 533 A.2d 253, 256 (D.C. 1987)). However, *Cassidy* was before the court on a motion for summary judgment, not a motion to dismiss, and the Court explained that summary judgment on the equitable estoppel claim was precluded in that case by the existence of an issue of fact. *Id.* at 256. The Court explained that "reasonableness is normally an objective standard" but found "no evidence pertaining to [the] factors [regarding equitable estoppel] was presented at the hearing." *Id.*

Moreover, even if plaintiff had not requested such information, the failure to obtain the financial information of the business prior to entering into the Sales Agreement precludes plaintiff's reliance upon any alleged misrepresentations regarding the financial condition of the business. *See Hoover Universal, Inc. v. Brockway Imco, Inc.*, 809 F.2d 1039, 1044 (4th Cir. 1987). The facts as alleged by plaintiff embody "circumstances where a prudent buyer would have conducted an investigation" such that "a buyer who fails to make such an investigation may not assert fraud based on the factual misrepresentation." *See id.*

**IV.   THE ALLEGED REPRESENTATIONS WHICH FORM THE BASIS FOR PLAINTIFF'S FRAUDULENT INDUCEMENT CLAIM (COUNT I) WERE NOT INCLUDED IN THE SALES AGREEMENT AND ARE PRECLUDED BY MERGER CLAUSE IN SALES AGREEMENT.**

Plaintiff cannot allege or prove reasonable reliance on the alleged representations concerning Pruitt's income, as no such representations or warranties were included in the Sales Agreement. *See supra* Section II(B); Sales Agreement ¶¶ 5-6 (setting forth representations and

warranties concerning marketable title to assets and Pruitt's Seafood's filing and payment of taxes, and covenants concerning transfer of assets free and clear of encumbrances).

## V.  THE REPRESENTATIONS, WARRANTIES, AND AGREEMENTS SET FORTH IN THE SALES AGREEMENT ONLY SURVIVED FOR THREE MONTHS FOLLOWING SETTLEMENT UNDER THE AGREEMENT AND CANNOT SERVE AS THE BASIS FOR PLAINTIFF'S CLAIMS.

Plaintiff's attempt to make out claims based upon the alleged breach or inaccuracy of representations and agreements fails as a matter of law because (a) the representations and agreements set forth in the Sales Agreement only survived for three months following settlement under the Agreement, and (b) plaintiff did not assert these claims until 16½ months after closing under the Sales Agreement.

There is no allegation that plaintiff asserted any claim for breach or inaccuracy of any representations or agreements during the survival period, and these claims are barred as a matter of law. *See Gressman v. Thibault*, 249 Va. 244, 248-49, 455 S.E.2d 512, 515 (1995) (where contract contained plain and unambiguous provision that terms, conditions, warranties and representations contained in contract survived closing only for a specified period of time, Court determined plaintiff was not entitled to a greater right of rescission than existed under the language of the contract).

Plaintiff now argues that its claim for rescission "is not based upon a representation, warranty, indemnity or agreement of the Sales Agreement" but rather the "failure of a condition subsequent which was expressed not in the Sales Agreement, but separately on the parties' Settlement Statement," namely the assignment of the dock lease. *See* Pl.'s Opp. ¶¶ 30-33. Plaintiff also purports to rely upon a Management Agreement, Lease, and Assignment and Assumption of Lease Agreement in support of this argument. *See* Pl.'s Opp. ¶¶ 30-33. Plaintiff, however, did not attach or include any of these documents to its Complaint. The purpose of the

18

12(b)(6) motion is to test the sufficiency of plaintiff's pleading.  Plaintiff cannot bring new claims or theories of liability at this stage.

Regarding the defects in the vessels, plaintiff claims that the defects are covered under the warranty because they allegedly existed as of the settlement date. Pl.'s Opp. ¶ 34. Plaintiff alleges that they were not apparent upon inspection at closing, but "surfaced afterwards, during the 90-day post-settlement period during which the warranty was effective." Pl.'s Opp. ¶¶ 34-35.  Nonetheless, plaintiff admits that it failed to bring any claim within the 90 day period, and gives no reason for its delay of 16 ½ months.

Instead, plaintiff argues, without citation to any authority, that defendants should still be responsible for these defects because plaintiff discovered them within the warranty period. Allowing plaintiff to bring its defect claim more than a year following the settlement, when the Agreement provided a 90-day warranty period, would defeat the purpose of having a warranty period.  In fact, because this transaction involved a sale of goods under the Uniform Commercial Code ("UCC"), the notice requirements of § 2-607 of the UCC are applicable to plaintiff's claims, particularly those regarding the barge and cook-boat. *See also* Va. Code Ann. § 8.2-607; D.C. Code § 28:2-607.  Section 2-607 provides in pertinent part: "Where a tender has been accepted (a) the **buyer must within a reasonable time after he discovers** or should have discovered **any breach** notify the seller of breach **or be barred from *any remedy*;** ...." (emphasis added).  Plaintiff admitted in its Opposition that it discovered the defects within the three month warranty period provided in the Sales Agreement.  Pl.'s Opp. ¶ 34-35.  However, plaintiff failed to provide notice to defendants at that time in the 13½ months following its alleged discovery until it filed this suit.  Plaintiff did not notify defendants within a reasonable time and is now "barred from any remedy."

## VI. PLAINTIFF WAIVED ANY CLAIMS BASED ON ASSIGNMENT OF LEASE (COUNT II) BECAUSE SALES AGREEMENT PROVIDED THAT REMEDY FOR NON-ASSIGNMENT WAS TO DECLARE SALES AGREEMENT NULL AND VOID PRIOR TO CLOSING.

Plaintiff's failure of consideration claim is premised on the assertion that the Sales Agreement "was subject to the parties obtaining assignment of the existing dock lease agreement between seller and the District of Columbia as agent for the United States government." *See* Compl. ¶ 22. Plaintiff admits that the parties closed the transaction on May 4, 2004, without obtaining approval of the lease assignment. *See* Compl. ¶ 23. The Sales Agreement contemplated but one remedy if approval of the lease assignment could not be obtained before settlement – plaintiff could "hold the Agreement null and void." Sales Agreement ¶ 9. DNM elected not to do so and instead has operated the business for more than 16 months before attempting to use the assignment issue as a basis for rescission. Rescission is not an available remedy under these circumstances, and the Court should dismiss Count II with prejudice. *See* *Gressman*, 249 Va. at 248-49, 455 S.E.2d at 515; *see also* Part IV, *supra* (regarding failure to seek rescission during three-month survival period for representations, warranties, and agreements under Sales Agreement).

Plaintiff does not contest the Contingencies provision of the Sales Agreement. Plaintiff instead argues that the execution of the Settlement Statement and the Management Agreement "were intended to change the lease assignment contingency from a condition precedent to a condition subsequent." Pl.'s Opp. ¶ 36. Plaintiff cites no authority other than its own "view of the case" in support of this contention. *Id.* Further, as addressed above in Section V, this argument was not part of plaintiff's pleadings as a basis for the rescission claim, and plaintiff cannot now raise new claims or theories of liability. *See* Compl.

## VII.    PLAINTIFF'S EQUITABLE CLAIMS ARE BARRED BY THE DOCTRINE OF LACHES.

The doctrine of laches prevents plaintiff from seeking rescission in this case. Prompt action is essential when one believes himself entitled to a rescission of a contract. *Miller v. Reynolds*, 216 Va. 852, 856-57, 223 S.E.2d 883 (1976). "[I]f such rescission is not sought within a reasonable time the right to rescind is lost." *Id.* at 856-57.

Laches likewise bars plaintiff's fraudulent inducement claim. Because a contract tainted with fraud is voidable, rather than void, promptness of action is required by the deceived party upon his discovery of the fraud. *West End Co. v. Claiborne*, 97 Va. 734, 752, 34 S.E. 900, 906 (1900). The law in Virginia is well settled: "The person who has been misled is required, as soon as he learns the truth, with all reasonable diligence to disaffirm the contract or abandon the transaction, and give the other party an opportunity of rescinding it, and of restoring both of them to their original position." *Id.* at 752, 34 S.E. at 906-07 (quoting 2 Pom. Eq. Jur. § 893).

The reason for this rule is clear: "He is not allowed to go on and derive all possible benefits from the transaction, and then claim to be relieved from his own obligations by a rescission or a refusal to perform on his own part." *Id.* at 752, 34 S.E. at 907. "If, after discovering the untruth of the representations, he conducts himself with reference to the transaction as though it were still subsisting and binding, he thereby waives all benefit of and relief from the misrepresentations." *Id.*; *see also Rouzie v. Dangerfield*, 97 Va. 708, 711, 34 S.E. 899, 900 (1900).

Plaintiff seems to contend that the Court is not able to properly assess whether laches applies to the facts of this case at this stage. Pl.'s Opp. ¶ 37. To the contrary, the facts alleged by plaintiff in its Complaint, and the undisputed facts set forth by defendants in their

Memorandum, exhibits and Affidavit of Stewart Pruitt demonstrate that plaintiff did *not* act within a reasonable time.

Plaintiff entered into the Sales Agreement in May 2004.  Plaintiff did not file this action seeking rescission of the Agreement until September 2005.  Although plaintiff has failed to allege when it "discovered" the alleged misrepresentation, plaintiff has for more than one year and four months, gone on to derive all possible benefits from the transaction, and has conducted itself as though the agreement was subsisting and binding.

**VIII.  PLAINTIFF'S BREACH OF CONTRACT CLAIM (COUNT III) BASED ON THE CONDITION OF VESSELS IS INCONSISTENT WITH AND IS PRECLUDED BY THE TERMS OF THE SALES AGREEMENT.**

DMN seeks damages for breach of contract in Count III based on the alleged condition of barges and a cook-boat.  DNM specifically references Paragraph 6(a) of the Sales Agreement in support of this claim, which provides in part:

> The equipment, furniture and fixture conveyed shall be in good working order, reasonable wear and tear excepted, on the settlement date and the Seller agrees to make all necessary repairs to the equipment, furniture and fixture in the event it is found at the time of settlement to be not in working order.  Purchaser shall be allowed to inspect the equipment, furniture and fixture the day before the settlement at its own costs and expenses.

Sales Agreement ¶ 6; *see* Compl. ¶ 27.  Plaintiff seeks to recover $800,000 in damages for the alleged unseaworthiness of the vessels some 16 months after settlement and more than a year after expiration of the "representations, warranties, indemnities, and agreements set forth" in the Sales Agreement.  *See* Sales Agreement ¶ 6.

Because of the provision in the Sales Agreement regarding inspection, Plaintiff is precluded as a matter of law from bringing this claim.  *See Smith v. Nonken*, 2000 WL 33179850, *4-5 (Va. Cir. 2000) (where contract contained express warranty that equipment "will be in working order at the time of settlement," but also provided for pre-settlement inspection "to

verify that the condition of the Property conforms to this contract," the court found that plaintiff's signature on the contract demonstrated her "knowledge of the facts basic to the exercise of the rights given under the contract") (copy attached).

Plaintiff argues that *Smith* does not apply because the plaintiff had also executed a pre-settlement inspection document. Pl.'s Opp. ¶ 39. However, the court recognized and analyzed this as a separate factor, and this does not diminish the court's finding that plaintiff's signature on the contract demonstrated her "knowledge of the facts basic to the exercise of the rights given under the contract" and that she knowingly waived her contractual warranty rights. *Smith*, 2000 WL 33179850, at *4-5.

Further, as addressed in Section V, the UCC precludes plaintiff from bringing this claim. Plaintiff did not notify defendants of the defect or breach within a reasonable time, and under the provisions of the UCC, is now "barred from any remedy." UCC § 2-607.

## IX.    CONCLUSION

For these reasons, Defendants, Pruitt's Seafood, Inc., and Stewart B. Pruitt, by counsel, respectfully move this honorable Court to grant defendants' Motion to Dismiss, to dismiss plaintiff's Complaint with prejudice, and to grant additional relief as appropriate.

**PRUITT'S SEAFOOD, INC.**
**STEWART B. PRUITT**

By:_____/s/_____
            **Of Counsel**

Karen A. Doner (#458626)
WILLIAMS MULLEN
8270 Greensboro Drive, Suite 700
McLean, VA  22102
(703) 760-5200
(703) 748-0244 (Fax)

William F. Devine (Va. Bar No. 26632)
David A. Greer (Va. Bar No. 24128)
Kendra J. Jarrell (Va. Bar No. 65583)
WILLIAMS MULLEN HOFHEIMER NUSBAUM
1700 Dominion Tower
Post Office Box 3460
Norfolk, Virginia  23514-3460
(757) 622-3366
(757) 629-0700 (Fax)

### Certificate Of Service

I HEREBY CERTIFY that on this 23rd day of November, 2005, a copy of the foregoing

document was sent via e-filing, to:

> Simon M. Osnos, Esq.
> 7700 Leesburg Pike, #434
> Falls Church, VA  22043
> Counsel for Plaintiff

_____/s/_____
Karen A. Doner

1071388v1